# No. 14-55789

IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

**JAMES A. BADAME and DIANE M. BADAME,**
*Plaintiffs—Appellants,*

*v.*

**JP MORGAN CHASE BANK, NA,**
*Defendant—Appellee.*

---

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA
PERCY ANDERSON, DISTRICT JUDGE • CASE NO. 2:13-CV-05425

---

# APPELLANTS' OPENING BRIEF

---

**HORVITZ & LEVY LLP**
PEDER K. BATALDEN
LISA M. FREEMAN
15760 VENTURA BOULEVARD, 18TH FLOOR
ENCINO, CALIFORNIA 91436-3000
(818) 995-0800

**GREBOW & RUBIN, LLP**
ARTHUR GREBOW
JULIE H. RUBIN
16133 VENTURA BOULEVARD, SUITE 260
ENCINO, CALIFORNIA 91436
(818) 783-1100

ATTORNEYS FOR PLAINTIFFS—APPELLANTS
**JAMES A. BADAME AND DIANE M. BADAME**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ v

JURISDICTIONAL STATEMENT ............................................................ 1

STATEMENT OF ISSUES PRESENTED ................................................. 2

STATEMENT OF THE CASE .................................................................. 3

    A.    Washington Mutual finances the Badames' residential loan, and Chase later acquires the loan from the FDIC. ....... 3

    B.    After making monthly payments for almost two years, the Badames fall on hard times and ask Chase to modify their loan or to short sell their home. The Badames cannot afford the modified payment. Chase declines the short-sale proposals. ............................................................... 4

    C.    Jim Badame secures new employment, Diane Badame's income increases, and the Badames can afford monthly payments. They renew their application for a loan modification. ........................................................................... 5

    D.    Chase "dual tracks" the Badames' application, placing it in foreclosure proceedings at the same time that it processes the loan modification application. .......................... 6

    E.    Chase does not finish processing the loan modification application before its scheduled foreclosure sale; it charges the Badames $31,856.54 to continue the sale. .......... 7

    F.    Chase incorrectly processes—and rejects—the Badames' application. ........................................................................... 7

    G.    Chase agrees to re-process the application correctly if the Badames pay an additional $15,933 to postpone the foreclosure sale again. .......................................................... 10

    H.    Chase denies the application without re-processing it. ....... 10

i

I.  Chase sells itself the Badames' home for less money than the short-sale prices it had declined. ................................. 12

J.  Chase writes to the Badames promising to re-evaluate their loan modification application. ..................................... 12

K.  Chase does not re-evaluate the Badames' loan modification application, and instead sells their home to a third party. ........................................................................ 13

L.  The Badames sue Chase in state court. Chase removes the case to federal court, and the district court denies remand. ....................................................................................... 14

M.  The district court grants summary judgment and enters judgment in favor of Chase. ................................................. 17

SUMMARY OF THE ARGUMENT ....................................................... 17

STANDARDS OF REVIEW ................................................................. 18

ARGUMENT ......................................................................................... 19

I.  THE DISTRICT COURT ERRED IN DENYING REMAND BECAUSE CHASE'S REMOVAL WAS IMPROPER. ................... 19

    A.  A defendant may remove within thirty days of the original complaint, or within thirty days of certain later events. But a defendant may not remove based on a later event if the action was removable based on the original complaint. ............................................................................ 19

    B.  The Badames showed in their remand motion that Chase *could* have removed the action based on the original complaint; hence Chase *could not* properly remove later. .... 20

        1.  An action is removable when the elements required for diversity jurisdiction are facially apparent from the original complaint—whether or not plaintiffs plead those elements expressly. ................................... 20

ii

2. It is facially apparent from the original complaint that the Badames sought damages exceeding $75,000. ........................................................................ 22

3. It is facially apparent from the original complaint that the Badames are California citizens and Chase is not. ............................................................................. 23

C. The impropriety of Chase's removal warrants vacatur of the judgment and a remand to state court. .......................... 25

II. THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT TO CHASE BECAUSE MOST OF THE BADAMES' CLAIMS PRESENT TRIABLE ISSUES OF MATERIAL FACT. ....................................................................... 27

A. *Negligence.* There is a triable factual issue as to whether Chase breached its duty to act with reasonable care in handling the Badames' loan modification. .......................... 27

1. Elements ........................................................................ 27

2. Chase owed a duty to act with reasonable care in processing the Badames' loan modification ................ 27

3. The record reveals a triable issue of fact as to whether Chase breached its duty to act with reasonable care while processing the Badames' loan modification. ................................................................ 33

4. Chase's breach of duty caused harm to the Badames. ...................................................................... 36

B. *Fraud and negligent misrepresentation.* There are triable factual issues about whether Chase made negligent misrepresentations—or lied—to the Badames. ..................... 37

1. Fraud and negligent misrepresentation claims involve deceit. Despite its name, negligent misrepresentation is not a species of negligence claim. ........................................................................... 37

iii

2.  The district court erred by evaluating the negligent misrepresentation claim as if it were a negligence claim. Under the proper standard, the Badames' evidence tended to show that Chase was affirmatively deceitful or unreasonably untruthful.... 38

3.  The record also supports the Badames' claim of fraud based on Chase's concealment of key facts........ 41

C.  *UCL violation.* The record contains evidence showing that Chase acted unfairly and fraudulently during the loan modification process.................................................... 44

CONCLUSION ........................................................................ 47

STATEMENT OF RELATED CASES ..................................... 48

CERTIFICATION OF COMPLIANCE ................................... 49

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abrego Abrego v. Dow Chem. Co.*,
443 F.3d 676 (9th Cir. 2006) ............................................................. 21

*Allen v. R & H Oil & Gas Co.*,
63 F.3d 1326 (5th Cir. 1995) ............................................................. 20

*Alvarez v. BAC Home Loans Servicing, L.P.*,
228 Cal. App. 4th 941 (2014) ................................. 6, 28, 29, 30, 36, 45

*Becker v. Wells Fargo Bank, NA, Inc.*,
No. 2:10–cv–02799 LKK KJN PS, 2012 WL 6005759
(E.D. Cal. Nov. 30, 2012) .................................................................. 43

*Biakanja v. Irving*,
49 Cal. 2d 647 (1958) ............................................................. 28, 29, 33

*Bily v. Arthur Young & Co.*,
3 Cal. 4th 370 (1992) ..................................................................... 38, 39

*Boschma v. Home Loan Ctr., Inc.*,
198 Cal. App. 4th 230 (2011) ......................................................... 42, 44

*Bushell v. JPMorgan Chase Bank, N.A.*,
220 Cal. App. 4th 915 (2013) ......................................................... 37, 41

*De Aguilar v. Boeing Co.*,
11 F.3d 55 (5th Cir. 1993) .................................................................. 20

*Destfino v. Reiswig*,
630 F.3d 952 (9th Cir. 2011) ......................................................... 18, 26

*Easter v. Am. W. Fin.*,
381 F.3d 948 (9th Cir. 2004) ..................................................... 18, 19, 40

*Galt G/S v. JSS Scandinavia*,
142 F.3d 1150 (9th Cir. 1998) ............................................................ 22

*Garcia v. Ocwen Loan Servicing, LLC*,
    No. C 10-0290 PVT, 2010 WL 1881098 (N.D. Cal. May 10,
    2010) ................................................................................................. 29

*Gaus v. Miles, Inc.*,
    980 F.2d 564 (9th Cir. 1992) (per curiam) ......................................... 26

*Gibson v. Chrysler Corp.*,
    261 F.3d 927 (9th Cir. 2001) .............................................................. 22

*Harris v. Bankers Life & Cas. Co.*,
    425 F.3d 689 (9th Cir. 2005) ........................................................ 19, 21

*Jolley v. Chase Home Fin., LLC*,
    213 Cal. App. 4th 872 (2013) ........................................ 31, 32, 36, 45

*Kairy v. SuperShuttle Int'l*,
    660 F.3d 1146 (9th Cir. 2011) ............................................................ 28

*Kanter v. Warner–Lambert Co.*,
    265 F.3d 853 (9th Cir. 2001) .............................................................. 23

*Kantor v. Wellesley Galleries, Ltd.*,
    704 F.2d 1088 (9th Cir. 1983) ............................................................ 23

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) ...................................................................... 46

*Kuxhausen v. BMW Fin. Servs. NA LLC*,
    707 F.3d 1136 (9th Cir. 2013) ............................................................ 22

*Lazar v. Superior Court*,
    12 Cal. 4th 631 (1996) ........................................................................ 37

*Lee v. Am. Nat'l Ins. Co.*,
    260 F.3d 997 (9th Cir. 2001) .............................................................. 23

*Lew v. Moss*,
    797 F.2d 747 (9th Cir. 1986) .............................................................. 24

*Lowdermilk v. U.S. Bank Nat'l Ass'n*,
    479 F.3d 994 (9th Cir. 2007) .............................................................. 21

*Luckett v. Delta Airlines, Inc.*,
  171 F.3d 295 (5th Cir. 1999) ............................................................. 20

*Lueras v. BAC Home Loans Servicing, LP*,
  221 Cal. App. 4th 49 (2013) ............................................... 27, 33, 39

*Merrill v. Navegar, Inc.*,
  26 Cal. 4th 465 (2001) ...................................................................... 27

*Nymark v. Heart Federal Savings & Loan Ass'n*,
  231 Cal. App. 3d 1089 (1991) ............................................ 30, 31, 32

*Rufini v. CitiMortgage, Inc.*,
  227 Cal. App. 4th 299 (2014) ........................................................... 39

*Settle v. World Sav. Bank, F.S.B.*,
  No. ED CV 11–00800 MMM (DTBx), 2012 WL 1026103
  (C.D. Cal. Jan. 11, 2012) ................................................................. 28

*Shamrock Oil & Gas Corp. v. Sheets*
  313 U.S. 100 (1941) ................................................................... 25, 26

*Singer v. State Farm Mut. Auto. Ins. Co.*,
  116 F.3d 373 (9th Cir. 1997) ............................................................ 21

*West v. JPMorgan Chase Bank, N.A.*,
  214 Cal. App. 4th 780 (2013) ..................................... 9, 38, 41, 45, 46

**Statutes**

28 U.S.C.
  § 1291 ................................................................................................ 2
  § 1294 ................................................................................................ 2
  § 1332 ................................................................................................ 1
  § 1441 .............................................................................................. 17
  § 1446 ........................................................... 2, 16, 17, 19, 21
  § 2107 ................................................................................................ 2

California Business and Professions Code § 17200 ............................... 44

California Civil Code § 2923.6 ..................................................... 6, 30, 36

## Rules

Fed. R. App. P. 4 ........................................................................ 2

Fed. R. Civ. P. 59 ...................................................................... 2

## Miscellaneous

Press Release, *Gov. Schwarzenegger Signs Legislation to
    Provide Greater Assistance to California Homeowners*
    http://gov.ca.gov/press-release/14871 ................................. 30

IN THE
# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

---

**JAMES A. BADAME and DIANE M. BADAME,**
*Plaintiffs—Appellants,*

*v.*

**JP MORGAN CHASE BANK, NA,**
*Defendant—Appellee.*

---

# APPELLANTS' OPENING BRIEF

---

## JURISDICTIONAL STATEMENT

Plaintiffs Jim and Diane Badame filed this action against JP Morgan Chase in California superior court on August 1, 2012. (2 ER 23.) Chase twice removed the action to the Central District of California. (1 ER 1.) The district court remanded sua sponte after the first removal. (2 ER 57-58.) After Chase's second removal (*id.* at 16), the district court denied the Badames' remand motion and exercised jurisdiction under 28 U.S.C. § 1332 (1 ER 1-3). (The removal proceedings are one subject of this appeal.)

On February 13, 2014, after granting Chase's motion for summary judgment, the district court entered a judgment in favor of Chase. (*Id.* at

1

14-15.) The Badames timely filed a Fed. R. Civ. P. 59 motion for reconsideration on March 14, 2014 (*see* 2 ER 242), which the district court denied on April 21, 2014 (*see id.*). On May 14, 2014, the Badames timely filed a notice of appeal from the judgment. (*Id.* at 230.) This Court has jurisdiction under 28 U.S.C. §§ 1291, 1294(1), and 2107, and under Fed. R. App. P. 4(a)(1)(A) and 4(a)(4)(A)(iv).

## STATEMENT OF ISSUES PRESENTED

1. *Chase's removal was defective.* Chase did not remove this case to federal court until after the thirty-day window prescribed by 28 U.S.C. § 1446(b)(1) had closed. The Badames timely and properly contested the removal. The district court erred by not remanding the case back to the Badames' chosen forum. This Court should vacate the judgment with directions to remand the case to state court.

2. *Summary judgment was improper.* Chase foreclosed on the Badames' home during the process of negotiating a loan modification. Chase's actions create triable issues of material fact as to whether Chase breached its duty to act with reasonable care in handling the Badames' loan modification, whether Chase made negligent misrepresentations or lied to the Badames, and whether Chase acted unfairly in violation of

2

California's Unfair Competition Law (the UCL). The district court therefore erred in summarily adjudicating the Badames' claims for negligence, negligent misrepresentation, fraud, and violation of the UCL.

(The addendum contains copies of pertinent statutes.)

## STATEMENT OF THE CASE

### A. Washington Mutual finances the Badames' residential loan, and Chase later acquires the loan from the FDIC.

The Badames bought their home at 1512 Via Lazo in Palos Verdes Estates on December 29, 1995. (2 ER 149.) After living there for eight years, they decided to build a new home on the property. (1 ER 4.) After the new home was built, Washington Mutual gave the Badames permanent financing—a $3,000,000 residential loan. (*Id.*) The Badames lived in another house at a different address during the construction; they always planned to move back into the Via Lazo home when construction was complete. (2 ER 149.)

Chase acquired the Badames' residential loan in 2008. (1 ER 4.)

3

**B.  After making monthly payments for almost two years, the Badames fall on hard times and ask Chase to modify their loan or to short sell their home. The Badames cannot afford the modified payment. Chase declines the short-sale proposals.**

Mr. Badame's automobile finance business tracked the recession of 2008. (1 ER 4.) In October 2008, Mr. Badame's salary was reduced by seventy-two percent. (2 ER 150.) Despite falling on hard times, the Badames made monthly mortgage payments to Chase for nearly two years. (*Id.*) Mr. Badame resigned from his business in August 2009 because the new owners of the company had stopped paying his salary in February 2009. (*Id.*) By October 2009, the Badames' savings were exhausted and they were unable to continue making monthly mortgage payments. (*Id.*)

Initially, the Badames applied for a loan modification, and the Badames provided Chase with a copy of Mr. Badame's Social Security Award letter showing a monthly benefit of $2,228. (*Id.*) Chase offered the Badames a trial modification with reduced monthly payments, but because Mr. Badame was unemployed, the Badames were unable to afford even the new, reduced payment. (1 ER 4; 2 ER 136.)

As a result, the Badames attempted to short sell their home—first on January 7, 2010, for $3,000,000, then on January 18, 2010, for $3,050,000,

4

and then in March and April of 2010 for $3,100,000. (2 ER 92-93.) Chase did not approve any of the short-sale proposals. (*Id.* at 151.)

## C. Jim Badame secures new employment, Diane Badame's income increases, and the Badames can afford monthly payments. They renew their application for a loan modification.

The Badames' financial situation improved when Mr. Badame secured new employment and Dr. Badame received a promotion with increased compensation from the University of Southern California. (*Id.*) The Badames' new income allowed them to "service debt and retain ownership" of their home. (*Id.*)

On May 12, 2010, Mr. Badame met with Carlos Gutierrez, a Chase representative, to discuss renewing the Badames' modification request. (*Id.*) After that meeting, Mr. Badame contacted Sherman Slade, a junior underwriter employed by Chase, who had been assigned to the Badames' account. (*Id.*) Mr. Badame told Mr. Slade about the meeting, and Mr. Slade requested that the modification package be sent directly to him because he would process the request. (*Id.*) The Badames then sent their new modification request and supporting documents to Mr. Slade in May 2010. (*Id.*)

**D.    Chase "dual tracks" the Badames' application, placing it in foreclosure proceedings at the same time that it processes the loan modification application.**

After Chase had received the loan modification application, Chase mailed the Badames a Notice of Trustee's Sale dated June 4, 2010. (*Id.*) Chase was engaging in the now-illegal practice of dual tracking the Badames' application. *See Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal. App. 4th 941, 950 (2014) (explaining the practice); Cal. Civ. Code § 2923.6(c) (West Supp. 2014) (prohibiting the practice). The notice said that the Badames' home would be sold at a public auction on June 25, 2010. (2 ER 151-52.) Mr. Slade told Mr. Badame that the notice was a system-generated notice that he should disregard. (*Id.* at 152.)

On June 9, 2010, Mr. Slade requested additional items of information from Mr. Badame. (*Id.*) That same day, Mr. Slade told Mr. Badame to disregard certain items that had been requested, and to wait to provide the remainder until Mr. Badame received his job offer letter. (*Id.*) On June 21, Mr. Badame sent Chase his formal offer letter and the additional documents Mr. Slade had requested. (*Id.*) He included bank account statements showing monthly social security deposits. (*Id.*)

**E.    Chase does not finish processing the loan modification application before its scheduled foreclosure sale; it charges the Badames $31,856.54 to continue the sale.**

On June 22, 2010, Mr. Slade told Mr. Badame that the modification package was complete, but that Chase would not process the application until the Badames paid $31,856 to postpone the foreclosure sale. (*Id.* at 153, 200-04.) According to Mr. Slade, this payment would postpone the sale until August 25, 2010, giving Chase plenty of time to review the modification request. (*Id.* at 153.) The Badames timely delivered a cashier's check for $31,856 to Chase on June 23, 2010. (*Id.* at 200-04.)

**F.    Chase incorrectly processes—and rejects—the Badames' application.**

On June 25, 2010, Mr. Badame emailed Mr. Slade to remind him to verify the social security income. (2 ER 153.)

On July 13, 2010, Mr. Badame received a notice dated July 6, 2010, which stated that Chase had declined the Badames' modification request. (*Id.*) Mr. Badame contacted Chase on the same day and was told to disregard the notice and to provide June paystubs and a hardship affidavit, even though Mr. Badame had already provided the hardship

affidavit with the original application in May. (*Id.*) Mr. Badame sent the June paystubs and re-sent the hardship affidavit that same day. (*Id.*)

On August 9, 2010, Mr. Slade asked for more paystubs—the June 2010 paystubs that the Badames had already provided, and their July 2010 paystubs. (*Id.* at 154.) Mr. Badame emailed the June and July paystubs to Mr. Slade that same day. (*Id.*)

Between July 24 and August 24, Mr. Badame asked Mr. Slade several times for an update on the status of the modification application, by phone message and in three emails. (*Id.*; *see id.* at 188 (emails on July 24 and August 5), 196 (email on August 21).) He received no response from Mr. Slade or from anyone else at Chase. (*Id.* at 154.)

It turned out that the Badames' application had been declined on August 13, 2010. (*Id.* at 172-73, 193.) If Mr. Slade did not know it then, according to Chase, Mr. Slade would have known about the denial at the latest by August 17, 2010, and should have notified the Badames as soon as he knew (*id.* at 181), but the Badames only learned of the denial when Mr. Badame called Mr. Slade on August 24, 2010—the day before the scheduled foreclosure sale (*id.* at 154).

8

Mr. Slade attributed the denial to insufficient income (*id.*), but when he and Mr. Badame reviewed Chase's calculations, it became clear that Chase had erred (*id.* at 154-55). Chase omitted Mr. Badame's social security income, and incorrectly included payments on the house where the Badames were living temporarily until they could move home. (*Id.*)

Chase was using the Net Present Value test to decide whether to modify the loan (1 ER 5). *See West v. JPMorgan Chase Bank, N.A.*, 214 Cal. App. 4th 780, 787 (2013) ("The NPV test is 'essentially an accounting calculation to determine whether it is more profitable to modify the loan or allow the loan to go into foreclosure.'"). Chase's NPV calculation was off by $7,243 per month ($2,230 in understated income and $5,013 in overstated expenses). (2 ER 154-55.) Mr. Slade said that correcting these errors (even before considering some $1,162 of the overstated expenses) would make a substantial difference; he put Mr. Badame on hold, spoke with the underwriter, and then told Mr. Badame that the Senior Underwriter would review the calculations and that the outcome looked very positive. (*Id.*)

**G.  Chase agrees to re-process the application correctly if the Badames pay an additional $15,933 to postpone the foreclosure sale again.**

During the same August 24 phone call, Mr. Slade said the bank would proceed with its scheduled foreclosure sale the following day unless the Badames provided more documentation and more money, in which case Chase would re-evaluate the loan modification request. (*Id.* at 138-39.) That same day, the Badames executed both a Foreclosure Postponement Agreement and, as Mr. Slade instructed, a listing agreement for the sale of the temporary house they lived in during the construction. (*Id.* at 156.)

The Badames agreed to pay an additional $15,933 to once more postpone Chase's foreclosure sale. (*Id.* at 129, 133-34.) Mr. Slade agreed that Mr. Badame could send the money the next day, August 25, when the bank opened. (*Id.* at 141.)

**H.  Chase denies the application without re-processing it.**

When Mr. Badame called Mr. Slade on August 25, at 8:34 a.m., to confirm his plan to send a cashier's check, Mr. Slade told him that the modification request was denied because of inadequate income and that

10

there was no point in sending the money. (*Id.* at 157.) Mr. Slade refused to review Chase's inputs with Mr. Badame. (*Id.*)

There is no evidence in the record that anyone at Chase ever calculated the NPV using the correct inputs. One minute before Mr. Badame called Mr. Slade—at 8:33 a.m.—Mr. Slade had emailed the Senior Underwriter to ask about the Badames' modification application (*id.* at 126, 157, 198); he does not remember receiving any response to his inquiry (*id.* at 174-75; *see id.* at 99 (answering *id.* at 78)).

According to Kellie O'Hanlon, Mr. Slade's supervisor (*see id.* at 176-77), the Badames' application never made it to Chase's vice president of underwriting or to Chase's vice president of default and servicing—either of whom could have approved it (*id.* at 180). The vice presidents had no time to review the application because Chase did not postpone the foreclosure sale. (*Id.*) In Ms. O'Hanlon's words, "because of the sale date," Mr. Badame's social security income was never included in an NPV calculation. (*Id.* at 182-83.)

**I.    Chase sells itself the Badames' home for less money than the short-sale prices it had declined.**

On August 25, 2010, Chase's Real Estate Owned (REO) Department bought the Badames' home for $2,635,000. (1 ER 7.)

On August 30, 2010, Mr. Slade told Mr. Badame that his file was in the REO Department and suggested that Mr. Badame contact that department to discuss reconsideration. (2 ER 43, 157.) Mr. Slade supplied a telephone number for the REO Department (*id.*), but when Mr. Badame called that number, a representative just referred him back to Mr. Slade (*id.* at 157).

**J.    Chase writes to the Badames promising to re-evaluate their loan modification application.**

On September 1, 2010, Chase sent a letter to the Badames stating that, although the bank deemed them ineligible for a loan modification, "[i]f we receive a request from you within thirty (30) calendar days from the date of this letter, we will provide you with the date the NPV calculation was completed and the input values [used by the bank to determine the NPV]." (*Id.* at 214.) The letter also provided that "[i]f, within thirty (30) calendar days of receiving this information you provide us with evidence that any of these input values are inaccurate, and those

12

inaccuracies are material, for example a significant difference in your gross monthly income or an inaccurate zip code, we will conduct a new NPV evaluation." (*Id.*)

The letter gave the Badames thirty days from September 1 to contact Chase, and promised that "no foreclosure sale will be conducted and *you will not lose your home during this thirty (30) day period*." (*Id.* at 215 (emphasis added).)[1]

## K. Chase does not re-evaluate the Badames' loan modification application, and instead sells their home to a third party.

The Badames timely responded to the September 1 letter and requested Chase's NPV inputs. (*Id.* at 219.)

Chase wrote back on September 28, 2010, but did not provide all of the information the Badames had requested; indeed, there was no information about their income. (*Id.* at 159, 221.) In reviewing the information Chase did provide, the Badames found an error in one of Chase's inputs, and an apparent error in two others. (*Id.* at 159.)

---

[1] The letter also said the Badames were ineligible for a loan modification because Chase could not verify they lived at the Via Lazo home. (2 ER 214.) That conflicted with Chase's prior assurances (*see id.* at 158) that the Badames did not need to move back into their home to qualify for a modification because Chase understood it was their primary residence.

13

On October 22, 2010, Mr. Badame faxed a response to the September 28 letter asking for the NPV inputs that Chase still had not provided; Mr. Badame once again provided the Badames' correct monthly income. (*Id.* at 159, 226-27.) The Badames sent a follow-up letter on October 30, 2010. (*Id.* at 159-60, 229.)

Chase did not tell the Badames that, in the meantime, it had sold their home to a third party for $2.5 million.[2] (1 ER 8; 2 ER 160.) The record in this case does not show that Chase ever disclosed all of its inputs to the Badames, or that it ever performed a new NPV evaluation.

## L.    The Badames sue Chase in state court. Chase removes the case to federal court, and the district court denies remand.

The Badames filed their complaint on August 1, 2012, in Los Angeles Superior Court. (2 ER 23.)

The complaint alleged that the Badames are married residents of Los Angeles (*id.* at 24); that the Badames bought the Via Lazo home in Palos Verdes Estates, California, in December 1995 (*id.* at 25); and that Dr. Badame was a full professor at the University of Southern California

---

[2]   Chase sold the Badames' home for $2.5 million "to the same purchaser who had previously submitted a short-sale offer in the amount of $3.1 million on April 8, 2010." (2 ER 101.)

business school (*id.* at 28). The Badames claimed that Chase had wrongfully foreclosed on their property, which was appraised at $5.5 million. (*Id.* at 25.) They sought money damages, restitution of amounts paid to Chase (with interest from June 2010)—including a cashier's check for $31,856 (*id.* at 27)—emotional distress, punitive damages, and attorney's fees (*id.* at 39-41).

Chase first removed the case to federal court almost a year later. (*See* 1 ER 1.) Chase's notice of removal stated that "on information and belief," the Badames are citizens of California because they declare that they reside in Los Angeles. (*See* 2 ER 58.) The district court remanded sua sponte, explaining that the notice of removal had not pleaded the Badames' domicile. (*Id.*; *see* 1 ER 1.)

On July 26, 2013, Chase removed the case a second time—this time alleging "Plaintiffs are citizens of the State of California based on Plaintiffs' long-standing domicile in California." (2 ER 18.) Chase explained that residence and place of employment are among the factors considered when determining domicile, and then referenced discovery responses providing information on the Badames' employment. (*Id.* at 19.)

15

The Badames moved to remand based on improper removal: "the Notice of Removal was not timely filed within the 30 days required by § 1446(b) of Title 28 of the United States Code." (*Id.* at 45; *see also id.* at 48-55.) Chase responded that its second removal was timely based on its belated "discovery of Plaintiff's citizenship" (*id.* at 60 n.1), arguing that "the Complaint did not allege Plaintiffs['] citizenship" (*id.* at 60; *see also id.* at 61 ("Neither the Complaint nor the FAC alleged Plaintiffs' citizenship."), 63 ("Here, neither the Complaint nor the FAC alleged Plaintiffs' current citizenship, but rather simply alleged residence."), 66 ("[B]ecause Plaintiffs failed to allege their citizenship in either their Complaint or FAC, the first thirty-day removal window was not triggered."), 67 ("[T]he Complaint failed to allege Plaintiffs' citizenship . . . ."), 68 ("[T]he basis for removal did not appear in the Complaint, as Plaintiffs' citizenship was not alleged.")).

The district court denied the Badames' motion to remand, ruling that "the allegations in the original Complaint and First Amended Complaint were insufficient to put Defendant on notice of the removability of the action." (1 ER 3.)

**M.  The district court grants summary judgment and enters judgment in favor of Chase.**

After remand was denied, the Badames filed a second amended complaint, which is the operative pleading. (2 ER 69.) Chase moved for (*id.* at 113), and ultimately obtained, summary judgment (1 ER 13). The district court later denied the Badames' subsequent motion for reconsideration based on additional discovery obtained after the summary judgment briefing had closed. (2 ER 242.) This appeal followed.

## SUMMARY OF THE ARGUMENT

*1. The case belongs in state court because it was not removable when Chase removed it.* It was facially apparent from the Badames' original complaint that their action was subject to removal under 28 U.S.C. §§ 1441 and 1446. But Chase did not then remove the action to federal court. Instead, Chase waited to remove until many months later, after they had received additional information in discovery that confirmed what was facially apparent from the complaint. By then, however, it was too late for Chase to remove. Under § 1446(b), a defendant may not remove an action based on later filings if the action was removable based on the original complaint. The district court therefore erred in denying the Badames'

17

remand motion. This Court should vacate the judgment and direct the district court to remand the entire action to state court.

*2. In any event, summary judgment was improper because there are triable issues of fact on four of the Badames' claims.* For a variety of reasons, the district court granted Chase summary judgment on all of the Badames' claims. That was an error because, for several claims, the presence of triable issues required a trial. On the Badames' negligence claim, there is a triable factual issue as to whether Chase breached its duty to act with reasonable care in processing the loan modification request. The breach was based in part on statements that were negligent misrepresentations or lies, and those statements provide the foundation for the Badames' fraud and negligent misrepresentation claims. Finally, the record shows that Chase acted unfairly and fraudulently during the loan modification process, thereby violating the UCL.

## STANDARDS OF REVIEW

1. This Court reviews de novo a district court order denying remand. *See Destfino v. Reiswig*, 630 F.3d 952, 955 (9th Cir. 2011).

2. This Court also reviews a grant of summary judgment de novo. *Easter v. Am. W. Fin.*, 381 F.3d 948, 956 (9th Cir. 2004). Whether the

district court correctly applied state substantive law is also reviewed de novo. *Id.*

## ARGUMENT

## I. THE DISTRICT COURT ERRED IN DENYING REMAND BECAUSE CHASE'S REMOVAL WAS IMPROPER.

**A. A defendant may remove within thirty days of the original complaint, or within thirty days of certain later events. But a defendant may not remove based on a later event if the action was removable based on the original complaint.**

Congress specified in 28 U.S.C. § 1446(b) two distinct thirty-day periods in which an action may be removed to federal court. "[T]he first thirty-day requirement is triggered by defendant's receipt of an 'initial pleading' that reveals a basis for removal." *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005) (quoting § 1446(b)). If that pleading reveals no ground for removal, then a later "notice of removal may be filed within thirty days after the defendant receives 'an amended pleading, motion, order or other paper' from which it can be ascertained from the face of the document that removal is proper." *Id.* In other words, a defendant may utilize the second thirty-day period only "[i]f the case stated by the initial pleading is not removable." 28 U.S.C. § 1446(b)(3) (2006).

**B.   The Badames showed in their remand motion that Chase *could* have removed the action based on the original complaint; hence Chase *could not* properly remove later.**

**1.   An action is removable when the elements required for diversity jurisdiction are facially apparent from the original complaint—whether or not plaintiffs plead those elements expressly.**

In *Allen v. R & H Oil & Gas Co.*, the Fifth Circuit adopted a lenient "facially apparent" standard to determine whether a pleading that does not specify an amount of claimed damages satisfies the amount-in-controversy requirement. 63 F.3d 1326, 1335 (5th Cir. 1995). The "facially apparent" standard functions like an educated guess about the relief a plaintiff seeks based on the limited information in a complaint. *Id.* at 1336 ("[T]he proper procedure is to look only at the face of the complaint and ask whether the amount in controversy was likely to exceed [the jurisdictional amount]."); *e.g.*, *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999) ("In the complaint, based on a tort theory of recovery, appellant alleged damages for property, travel expenses, an emergency ambulance trip, a six day stay in the hospital, pain and suffering, humiliation, and her temporary inability to do housework after the hospitalization. Therefore, the district court had jurisdiction to decide the merits of the case."); *De Aguilar v. Boeing Co.*, 11 F.3d 55, 57 (5th Cir.

20

1993) ("It is facially apparent that the claims in this case—claims for wrongful death, terror in anticipation of death, loss of companionship, and funeral expenses—did exceed $50,000 at the time of removal.").

This Court adopted the Fifth Circuit's "facially apparent" standard. *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) ("The Fifth Circuit has described an appropriate procedure for determining the amount in controversy on removal. The district court may consider whether it is 'facially apparent' from the complaint that the jurisdictional amount is in controversy. . . . We agree with the Fifth Circuit.") (citation omitted). This standard amounts to a threshold inquiry when removal is based on diversity jurisdiction: "Our starting point is 'whether it is "facially apparent" from the complaint that the jurisdictional amount is in controversy.'" *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 998 (9th Cir. 2007); *see Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 690-91 (9th Cir. 2006) (applying this standard); *see also Harris*, 425 F.3d at 694 ("[N]otice of removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings.").

In tabulating the amount in controversy alleged, courts first consider possible compensatory damages, but they may also consider punitive

damages and attorney's fees if governing law allows plaintiffs to recover those measures of relief. *See Gibson v. Chrysler Corp.*, 261 F.3d 927, 945-46 (9th Cir. 2001) (punitive damages); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (attorney's fees).

**2.  It is facially apparent from the original complaint that the Badames sought damages exceeding $75,000.**

The Badames' original complaint requested restitution of amounts paid to Chase (with interest from June 2010), and paragraph 25 specifies a cashier's check made out to Chase for $31,856. (2 ER 27.) Other allegations demonstrate that the Badames were seeking well more than another $45,000. The Badames pleaded that Chase wrongfully foreclosed on their property, which was appraised at $5.5 million (*id.* at 25), and they sought emotional distress and punitive damages, plus attorney's fees (*id.* at 39-41). Standing alone, each of these categories of relief would likely be valued at more than $45,000. In the aggregate, it is obvious—"facially apparent"—that the Badames sought relief in excess of $75,000. *See Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1140 (9th Cir. 2013) ("[D]efendants need not make extrapolations or engage in

guesswork; yet the statute 'requires a defendant to apply a reasonable amount of intelligence in ascertaining removability.'").

Put differently, if Chase had timely removed the action based on the original complaint, the Badames could not have shown to a "legal certainty" that their complaint did not satisfy the amount in controversy requirement; thus any effort to remand would have failed. *See Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1001 (9th Cir. 2001) ("The complaint states a claim by Lee for compensatory and punitive damages that will not to a 'legal certainty' amount to less than the jurisdictional threshold of $75,000. On the face of things, then, the defendants' removal of this action to the district court was proper.").

### 3. It is facially apparent from the original complaint that the Badames are California citizens and Chase is not.

To establish citizenship for diversity jurisdiction purposes, a person is a "citizen" of the state in which he is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A person's domicile is the place he resides with the intention to remain. Intention is critical—a person residing in a state is not domiciled there if he intends to return to a different state where he has previously resided. *Kanter v. Warner–Lambert*

*Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Courts presume that a person's residence is also his domicile. *Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986). Courts consider other factors as well, including length of residence, employment, location of assets, and location of family. *Id.* at 750.

Here, the Badames' original complaint pleaded they were "husband and wife and residents of" Los Angeles County, California. (2 ER 24.) This allegation triggered the presumption, under *Lew*, that the Badames are domiciled in California and are therefore citizens of California. Nothing in the remainder of the complaint rebuts that presumption. In fact, several other allegations confirm the Badames' California domicile:

(a)   The location of family is an important domiciliary factor, and both Badames reside in California (*id.*);

(b)   The Badames' intentions are evident from their desire to make their home at the Via Lazo property (thus staying in California) by selling the other house as soon as Chase approved a loan modification (*id.* at 27-28); from the fact that "the property was Plaintiffs' primary residence" (*id.* at 32); and from Chase's September 1 letter promising that the Badames "will not lose your *home*" (*id.* at 31) (emphasis added);

(c)   Employment is a significant factor, and Dr. Badame is a professor at the USC business school (*id.* at 28); and

(d)   The location of assets is an important factor; the Badames had owned the Via Lazo home since 1995 (*id.* at 25).

There is no hint in the original complaint that the Badames were considering changing their domicile to another state. This case might be different if allegations in the complaint could plausibly be read to suggest an alternative domicile. But there is no other candidate—nothing in the complaint hints that the Badames might have sufficient connections (or any connections) to another state to call into question whether they intended to remain where they now reside. In this circumstance, the Badames' residence in California raises a presumption of California domicile that the balance of the complaint's allegations confirm. Chase suggests that the Badames' California citizenship only became "unequivocally clear when Chase received Plaintiffs' responses to discovery on June 27, 2013." (*Id.* at 60-61.) But Chase needed neither discovery responses nor to search its files to determine the Badames' citizenship; the Badames' citizenship was facially apparent from the original complaint.

## C. The impropriety of Chase's removal warrants vacatur of the judgment and a remand to state court.

In *Shamrock Oil & Gas Corp. v. Sheets*, a state court defendant filed a counterclaim and *plaintiff* then removed the case to federal court asserting diversity jurisdiction. 313 U.S. 100, 102-03 (1941). The district

court denied a remand motion, the case was later tried on the merits, and judgment was entered for plaintiff. *Id.* at 103. The Fifth Circuit set aside the judgment on appeal, and the Supreme Court affirmed, holding that removal was improper because Congress had authorized removal only by *defendants*. *See id.* at 108-09. Thus, a non-removing party may argue that a violation of removal requirements imperils the resulting judgment. *See Destfino*, 630 F.3d at 955-56 (considering, though ultimately rejecting, a defective removal argument based on whether the defendant had removed outside the first thirty-day period); *Gaus v. Miles, Inc.*, 980 F.2d 564, 565-66 (9th Cir. 1992) (per curiam) (vacating a summary judgment for defendant in a removed action, and instructing the district court to remand to state court because of a defect in the removal petition's amount-in-controversy allegations—even though, after removal, additional information suggested the prerequisites for removal existed).

Here, as we have shown above, Chase did not remove the case within thirty days after the original complaint was served. Because the action was removable based on the original complaint, Chase's later removal was untimely and improper. The appropriate remedy is to vacate the judgment and to direct the district court to remand the case to state court.

## II.   THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT TO CHASE BECAUSE MOST OF THE BADAMES' CLAIMS PRESENT TRIABLE ISSUES OF MATERIAL FACT.

**A.   *Negligence.* There is a triable factual issue as to whether Chase breached its duty to act with reasonable care in handling the Badames' loan modification.**

### 1.   Elements

The elements of a negligence claim are (1) the existence of a legal duty to exercise due care, (2) breach of that duty, (3) causation, and (4) damages. *Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 477 (2001).

### 2.   Chase owed a duty to act with reasonable care in processing the Badames' loan modification.

"Whether a duty of care exists is a question of law to be determined on a case-by-case basis." *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 62 (2013). To answer that question in the context of a financial institution's obligations to a borrower-client, the *Lueras* court invoked and balanced a series of factors first enunciated by the California Supreme Court: "[1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered,

27

[5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm." *Biakanja v. Irving*, 49 Cal. 2d 647, 650 (1958).

This Court should follow this approach as well. *See generally Kairy v. SuperShuttle Int'l*, 660 F.3d 1146, 1150 (9th Cir. 2011) ("'[This Court] must predict how the California Supreme Court would decide the issue, using intermediate appellate court decisions, statutes, and decisions from other jurisdictions as interpretive aids.'"). Although California Court of Appeal decisions are not uniform, they can and should be read to favor the Badames' position. *E.g.*, *Alvarez*, 228 Cal. App. 4th at 951 (there is a duty to use reasonable care in processing a loan modification and failing to process the applications in a timely manner, dual tracking, and losing documents "fall well within," and therefore breach, that duty);[3] *id.* at 947 n.7 (collecting multiple similar decisions from federal district courts).[4]

---

[3]  Because *Alvarez* was decided after the district court granted Chase's motion for summary judgment, the district court in this case did not have the benefit of the guidance provided in *Alvarez*.

[4]  *But see, e.g.*, *Settle v. World Sav. Bank, F.S.B.*, No. ED CV 11–00800 MMM (DTBx), 2012 WL 1026103, at *8 (C.D. Cal. Jan. 11, 2012) (collecting rulings that banks owe no duty of care to borrowers regarding loan modification applications).

*Alvarez* analyzed the *Biakanja* factors in a manner that points in favor of recognizing a duty of care in this case as well:

> Factor 1. "The transaction was unquestionably intended to affect Plaintiff[s]. The decision on Plaintiff[s'] loan modification application would determine whether or not [they] could keep [their] home."

228 Cal. App. 4th at 948 (quoting *Garcia v. Ocwen Loan Servicing, LLC*, No. C 10-0290 PVT, 2010 WL 1881098, at *3 (N.D. Cal. May 10, 2010)).

> Factor 2. "The potential harm to Plaintiff[s] from mishandling the application processing was readily foreseeable: the loss of an opportunity to keep [their] home was the inevitable outcome. Although there was no guarantee the modification would be granted had the loan been properly processed, the mishandling of the documents deprived Plaintiff[s] of the possibility of obtaining the requested relief."

*Id.*

> Factor 3. "The injury to Plaintiff[s] is certain, in that [they] lost the opportunity of obtaining a loan modification and . . . [their] home was sold."

*Id.*

> Factor 4. "There is a close connection between Defendant's conduct and any injury actually suffered, because, to the extent Plaintiff[s] otherwise qualified and would have been granted a modification, Defendant's conduct . . . directly precluded the loan modification application from being timely processed."

*Id.*

Factor 5. "The existence of a public policy of preventing future harm to home loan borrowers is shown by recent actions taken by both the state and federal government to help homeowners caught in the home foreclosure crisis. *See, e.g.*, Cal. Civ. Code § 2923.6 (encouraging lenders to offer loan modifications to borrowers in appropriate circumstances); see also, Press Release at http://gov.ca.gov/press-release/14871 ('Gov. Schwarzenegger Signs Legislation to Provide Greater Assistance to California Homeowners'), and MakingHomeAffordable.gov (describing the federal 'Making Home Affordable Program')."

*Id.*

Factor 6. The court did not determine whether this factor favored the borrower or the lender, but held that standing alone it did not alter the balance of factors. "Whether or not moral blame attaches to this Defendant's specific conduct[,] this factor is insufficient to tip the balance away from the finding of a duty of care."

*Id.*

As in *Alvarez*, each of these factors favors the recognition of a duty of care in this case.

The district court nonetheless ruled that Chase did not owe a duty of care. (1 ER 11.) That ruling is the product of misplaced reliance on a case cited by Chase, *Nymark v. Heart Federal Savings & Loan Ass'n*, 231 Cal. App. 3d 1089 (1991). The district court quoted *Nymark* as though that court's analysis precluded the existence of a duty of care in considering

loan modifications. (1 ER 11.) But "*Nymark* and the cases cited therein do not purport to state a legal principle that a lender can never be held liable for negligence in its handling of a loan transaction within its conventional role as a lender of money." *Jolley v. Chase Home Fin., LLC*, 213 Cal. App. 4th 872, 902 (2013), review denied (May 22, 2013).

In *Nymark*, plaintiff had executed a promissory note to purchase a home. 231 Cal. App. 3d at 1092. To refinance the note, plaintiff applied to defendant, a lender, for a loan that would be secured by the home. *Id.* at 1093. Defendant conducted an appraisal of the home to determine whether to make the loan. *Id.* The appraiser reported that the home was in acceptable condition, and plaintiff relied on that representation. *Id.* But several years later, county inspectors uncovered numerous construction defects requiring plaintiff to vacate the home and pay for substantial upgrades. *Id.*

Plaintiff sued the lender, alleging it owed a duty of care in assessing the adequacy of the security (the home), and that the lender had breached that duty by conducting a negligent appraisal. *Id.* at 1093, 1096. The Court of Appeal held that the lender did not owe such a duty: the lender performed the appraisal "in the usual course and scope of its loan

processing procedures," not "to assure [plaintiff] that his collateral was sound." *Id.* at 1096-97.

The *Nymark* plaintiff took the fruits of the lender's loan application file and employed them for an entirely different purpose—to gauge the habitability of his home. Lenders cannot anticipate the myriad ways in which borrowers might repurpose information they obtain from the lender. *Nymark* stands for the unremarkable proposition that a lender owes no duty of care when borrowers rely on that information for an entirely different purpose. *See Jolley*, 213 Cal. App. 4th at 901-02 (explaining *Nymark*). This case does not implicate that proposition because the Badames seek to recover only for Chase's breach of its duty to apply reasonable care in performing its traditional functions as a lender (processing the Badames' loan modification request). Unlike the situation in *Nymark*, the Badames' theory of liability is not predicated on using information gathered from Chase for a purpose unrelated to their loan modification application.

On top of the mistake in analogizing to *Nymark*, the district court mistook the very nature of the duty articulated by the Badames. The Badames argued for the existence of a duty to apply reasonable care when

*processing* a modification application. (2 ER 147.) But the district court rejected their argument by construing it as something else entirely—a duty to *offer or approve* a modification. (*See* 1 ER 11 (citing *Lueras*, 221 Cal. App. 4th at 67).) The Badames never argued that such a duty exists.

As a result of these errors, the district court never reached what should have been the centerpiece of its analysis, the *Biakanja* factors. Had the court considered those factors, it would have determined (as in *Alvarez*) that Chase owed a duty of care to the Badames not to negligently process their modification application.

### 3. The record reveals a triable issue of fact as to whether Chase breached its duty to act with reasonable care while processing the Badames' loan modification.

In at least nine ways, Chase breached its duty to apply reasonable care when processing the Badames' modification application.

First, Chase repeatedly failed to calculate the NPV using Mr. Badame's social security income, despite ample time and reminders to do so, despite accepting payment to do so, and despite possessing the documentation necessary to do so accurately. (2 ER 206-07 (reminder on June 25, 2010), 209-10 (reminder on July 13, 2010), 154, 212 (reminder on August 9, 2010), 150 (social security award letter sent to Chase in October

33

2009), 153, 167 (first postponement agreement would provide sufficient time to process the application), 182-83 (social security income was never included in an NPV calculation).)

Second, Chase never submitted the Badames' modification request to a vice president because, according to Chase, it was not "able" to postpone the foreclosure date. (*Id.* at 180.)

Third, on the morning of August 24, Mr. Slade lied to the Badames about Chase having made a final decision on their modification application. Mr. Slade sent an internal email inquiring about the status of the Badames' application, but one minute later, without receiving any response, he told Mr. Badame that the application had been denied. (*Id.* at 126, 157, 175.)

Fourth, Chase consistently sent the Badames written documents, but then purported to negate or modify those documents orally. Yet when the Badames relied on the oral statements, Chase purported to retain the ability to enforce the written notice. For example, Chase told the Badames to disregard the deadline for payment under the written postponement agreement (*id.* at 156), but now claims that Mr. Badame breached the agreement by not paying under its written terms (*id.* at 120-23). *See also*

34

*id.* at 151-52 (instructions to disregard a system-generated notice of trustee's sale), 153 (instructions to disregard a notice that the modification request had been declined), 214 & 221 (*post-foreclosure* notices purporting to offer a new NPV calculation).

Fifth, Chase asked for the same documents multiple times. (*Id.* at 152 (social security award letter), 154 (paystubs).)

Sixth, Chase did not do what it promised to do in its September 1 letter. It never showed the Badames the complete NPV inputs it used, it never re-evaluated the NPV based on the correct inputs (*id.* at 182-83), and it sold the Badames' home to a third party (*id.* at 101).

Seventh, Chase did not respond promptly to inquiries, even in the month leading up to the foreclosure sale. (*See id.* at 154 ("Between July 24 and August 24, [Mr. Badame] asked Mr. Slade several times for an update concerning the status of [the Badames'] proposed modification, via phone message and E-mail, and received no response."); *see also id.* at 188 (emails on July 24 and August 5), 196 (email on August 21).)

Eighth, Chase waited until the last minute to make requests, and to inform the Badames of the status of their application. Even though Chase knew that its NPV calculation was negative by August 17 (*id.* at 181), it

35

did not tell the Badames until August 24, the day before the foreclosure sale, when Mr. Badame was finally able to reach Mr. Slade (*id.* at 154).

Ninth, Chase did not engage in the loan modification in good faith. By dual tracking (processing the loan modification and at the same time pursuing foreclosure), Chase frustrated the purpose of any postponement agreement; instead of taking time to evaluate the loan modification package, Chase foreclosed on the property. *See Jolley*, 213 Cal. App. 4th at 904 ("'Mortgage lenders call it "dual tracking," but for homeowners struggling to avoid foreclosure, it might go by another name: the double-cross.'") (Dual tracking has since been made illegal: California Civil Code section 2923.6(c) prohibits a bank from foreclosing while a loan modification application is pending.)

## 4.    Chase's breach of duty caused harm to the Badames.

Simply showing that the Badames were harmed by Chase's negligence—which they have done—is sufficient to defeat summary judgment. We will not belabor the particulars of the Badames' many damages theories at this stage. Suffice it to say that in addition to damages related to losing any chance of keeping their family home, *see Alvarez*, 228 Cal. App. 4th at 949 ("[T]he mishandling of the documents

deprived Plaintiff of the possibility of obtaining the requested relief."), and the time and energy they spent through the loan modification process "repeatedly contacting Chase and repeatedly preparing documents at Chase's request," *Bushell v. JPMorgan Chase Bank, N.A.*, 220 Cal. App. 4th 915, 928, 931 (2013), it is undisputed that the Badames paid Chase $31,856.54 so that Chase could re-calculate the NPV using the correct inputs (*see* 2 ER 143).

**B.** ***Fraud and negligent misrepresentation.* There are triable factual issues about whether Chase made negligent misrepresentations—or lied—to the Badames.**

   **1.    Fraud and negligent misrepresentation claims involve deceit. Despite its name, negligent misrepresentation is not a species of negligence claim.**

A defendant commits fraud when (1) it makes a false representation as to a past or existing material fact; (2) it knows the representation was false when made; (3) it intends to deceive the plaintiff; (4) the plaintiff justifiably relies on the representation; and (5) the plaintiff suffers resulting damages. *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996).

"The elements of negligent misrepresentation are the same except for the second element, which for negligent misrepresentation is the defendant made the representation without reasonable ground for

37

believing it to be true." *West*, 214 Cal. App. 4th at 792. Thus, a claim of negligent representation is not a species of negligence; it is a species of the tort of deceit (which also includes fraud). *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 407 (1992).

In *West*, plaintiff "alleged that, in [an] April 5, 2010 letter, Chase Bank falsely represented that it would reevaluate her case and send her the NPV input data if she so requested within 30 days." 214 Cal. App. 4th at 793. The court noted that "[t]he April 5 letter [was] from the Chase Fulfillment Center and, though the letter does not identify the preparer, West did not have to plead that information because it was uniquely within Chase Bank's knowledge." *Id.* Because plaintiff alleged that Chase had never reevaluated her case, the court determined she had pleaded fraud with the requisite specificity. *Id.*

> **2. The district court erred by evaluating the negligent misrepresentation claim as if it were a negligence claim. Under the proper standard, the Badames' evidence tended to show that Chase was affirmatively deceitful or unreasonably untruthful.**

The district court erred in ruling that "[t]he absence of a duty of care is . . . fatal to Plaintiffs' negligent misrepresentation claim." (1 ER 12.) By requiring that a duty of care be shown, the district court misconceived

negligent misrepresentation as a species of negligence (a claim for which a duty of care must be established). *See Bily*, 3 Cal. 4th at 407. In any event, the district court was mistaken even on its own terms: "a lender *does* owe a duty to a borrower to not make material misrepresentations about the status of an application for a loan modification or about the date, time, or status of a foreclosure sale." *Lueras*, 221 Cal. App. 4th at 68 (emphasis added); *see also Rufini v. CitiMortgage, Inc.*, 227 Cal. App. 4th 299, 309 (2014) (rejecting the bank's argument that "banks owe their borrowers no duty not to misrepresent the truth in the context of loan modification allegations/discussions").

Having separated negligent misrepresentation from negligence, we turn now to the evidence in the record, which reveals three statements that (if accepted by a jury) would plainly satisfy the elements of fraud or negligent misrepresentation.

Mr. Slade made two related misrepresentations that caused Mr. Badame not to send payment under the postponement agreement. First, on August 24, Mr. Slade told the Badames that he had authority to accept their payment the day after the payment was due under the written terms of the postponement agreement. (2 ER 156.) This was false: Chase now

claims that the Badames breached the agreement by not timely paying under its written terms. (*Id.* at 120-23.) Second, on August 25, Mr. Slade deceived Mr. Badame into believing that Chase's underwriters had re-calculated the NPV using the correct inputs, and that Chase had made a final decision on the Badames' application. (*Id.* at 155, 157.) Neither was true. (*See id.* at 175,[5] 180, 182-83.) Chase's first misrepresentation caused the Badames not to send payment on August 24; its second misrepresentation caused the Badames not to send payment on August 25. Chase then foreclosed without ever correctly calculating the NPV. (*See id.* at 182-83.)

---

[5] The district court ruled that Chase's emails "do not provide any evidence that Slade misrepresented the status of Plaintiffs' requested loan modification when he spoke to Mr. Badame on the morning of August 25, 2010." (1 ER 12.) The district court reasoned that because Mr. Slade had sent his email asking whether the "new" information would change the NPV calculation *before* speaking to Mr. Badame, it cannot be evidence that Mr. Slade inaccurately informed Mr. Badame that Chase had once again denied the request for a loan modification. (*Id.*) But it is a reasonable inference that Mr. Slade had not received any response in the minute that elapsed between his email requesting a status update on the Badames' application and Mr. Badame's call to Mr. Slade. This is especially so where Chase has produced no email response to Mr. Slade's inquiry, Mr. Slade does not remember receiving any response, and Mr. Slade's supervisor testified that the NPV was never re-calculated using the correct inputs. "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter*, 381 F.3d at 957.

Chase made one additional misrepresentation. It sent the September 1 letter to the Badames promising not to foreclose and inviting the Badames to engage further in the modification process (which they did), when Chase had already foreclosed on the property. *See West*, 214 Cal. App. 4th at 798-99 (holding that the letter in that case served as a contractual modification of the parties' prior agreement). The Badames were damaged by that lie by the "time they spent repeatedly contacting Chase and repeatedly preparing documents at Chase's request." *Bushell*, 220 Cal. App. 4th at 928.

### 3. The record also supports the Badames' claim of fraud based on Chase's concealment of key facts.

Fraud may also be based on concealment. "'[T]he elements of an action for fraud and deceit based on concealment are: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or

suppression of the fact, the plaintiff must have sustained damage.'" *Boschma v. Home Loan Ctr., Inc.*, 198 Cal. App. 4th 230, 248 (2011).

Mr. Slade knew that Chase had declined the Badames' proposed modification, but he did not inform the Badames for at least five days. (2 ER 154, 181.) Despite Mr. Badame's repeated inquiries, Mr. Slade waited to tell the Badames until the day before the scheduled foreclosure sale. (*Id.* at 154-55.) Fair inferences arise from the Badames' evidence, including Chase's delay in informing the Badames that it had made a decision, and the artificial barriers Chase put in the postponement agreement as prerequisites for reconsideration, that Chase never intended to correct the error in its calculations. The postponement agreement appears to have been a charade since Chase foreclosed on the property without giving the Badames a meaningful opportunity to perform (pay) under the agreement; instead, Chase lied to Mr. Badame in order to induce him not to pay.

"Reliance can be proved in a fraudulent omission case by establishing that 'had the omitted information been disclosed, [the plaintiff] would have been aware of it and behaved differently.'" *Boschma*, 198 Cal. App. 4th at 250-51. Had Mr. Slade told the Badames earlier that Chase had declined the modification, they would have had time to pay under the postponement

agreement, and the foreclosure sale would have been postponed. Then, according to Chase's loss mitigation supervisor, there would have been time to include Mr. Badame's social security income in the calculation and, even if the new calculation were negative, there would have been time for either of two vice presidents to override the NPV and approve the modification. (*See* 2 ER 180, 182-83.)

The money the Badames paid Chase—$31,856.54 for the privilege of trying to correct mistaken calculations, where Chase admits it took the money but never corrected its calculations—is sufficient to show that the Badames suffered damages. *See Becker v. Wells Fargo Bank, NA, Inc.*, No. 2:10–cv–02799 LKK KJN PS, 2012 WL 6005759, at *5 (E.D. Cal. Nov. 30, 2012) ("[P]laintiff has alleged material misrepresentations of fact with respect to the requested loan modifications, his reliance on defendants' representations thereon, and resulting damages in the form of, among other things, premature withdrawals from his IRA accounts resulting in loss of tax-deferred income.").

**C.** *UCL violation.* **The record contains evidence showing that Chase acted unfairly and fraudulently during the loan modification process.**

California's Unfair Competition Law makes unlawful any "unfair . . . business act or practice." Cal. Bus. & Prof. Code § 17200 (West 2008). California courts have developed three distinct tests (applied singly or jointly) for assessing when conduct is "unfair" under the UCL.

First, "[a]ccording to some appellate courts, a business practice is 'unfair' under the UCL if: (1) the consumer injury is substantial; (2) the injury is not outweighed by any countervailing benefits to consumers or competition; and (3) the injury could not reasonably have been avoided by consumers themselves." *Boschma*, 198 Cal. App. 4th at 252.

Second, "[o]ther courts require 'that the public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL . . . be tethered to specific constitutional, statutory, or regulatory provisions.'" *Id.*

Third, some courts "assess whether the practice 'is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers . . . [weighing] the utility of the defendant's conduct against the gravity of the harm to the alleged victim.'" *Id.*

Here, Chase's September 1 letter is at least disputed evidence that Chase "made misrepresentations regarding a borrower's right and ability to challenge the bank's calculation of the NPV," and that constitutes an "unfair business practice[ ] under *any* of the three definitions." *West*, 214 Cal. App. 4th at 806 (emphasis added).[6] Similarly, "while dual tracking may not have been forbidden by statute at the time, the new legislation and its legislative history may still contribute to its being considered 'unfair' for purposes of the UCL," making summary adjudication of a UCL claim resulting from dual tracking "improper." *Jolley*, 213 Cal. App. 4th at 907-08.

"[S]tatements [that] may be construed as misstatements of fact," "raise[ ] a triable issue as to 'fraudulent'" conduct under the UCL's terms. *Id.* at 907. "A fraudulent practice under the UCL 'require[s] only a showing that members of the public are likely to be deceived' and 'can be shown even without allegations of actual deception, reasonable reliance and damage.'" *West*, 214 Cal. App. 4th at 806. The UCL authorizes a

---

[6]  Like *Alvarez*, *West* was decided after the district court granted Chase's motion for summary judgment.

restitutionary remedy, and the Badames are entitled to restitution. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1152 (2003).

In *West*, Chase, facing allegations similar to the ones it faces here, conceded that the plaintiff's cause of action under the UCL "depend[ed] on the viability of the underlying claims," and there, as here, "the claims for fraud [and] negligent misrepresentation . . . are viable." 214 Cal. App. 4th at 806. As in *West*, Chase cannot obtain summary judgment in this case.

## CONCLUSION

Because Chase's removal was procedurally improper, this Court should vacate the judgment and direct the district court to remand the case to state court. In the alternative, if this Court reaches the merits, the Court should reverse the summary judgment and remand for trial on the claims discussed in this brief.

November 20, 2014      **HORVITZ & LEVY LLP**
       PEDER K. BATALDEN
       LISA M. FREEMAN
     **GREBOW & RUBIN, LLP**
       ARTHUR GREBOW
       JULIE H. RUBIN

By:      s/Lisa M. Freeman

Attorneys for Plaintiffs—Appellants,
**JAMES A. BADAME and DIANE M. BADAME**

47

## STATEMENT OF RELATED CASES

Appellants know of no cases requiring disclosure under Circuit Rule 28-2.6.

## CERTIFICATION OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION, TYPEFACE
## REQUIREMENTS, AND TYPE STYLE REQUIREMENTS
## [FED R. APP. P. 32(a)(7)(C)]

☒ 1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    ☒      this brief contains 9,346 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

    ☐      this brief uses monospaced typeface and contains [state the number of] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

☒ 2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    ☒      this brief has been prepared in a proportionally spaced typeface using MS-Word in 14-point Century Schoolbook font type, or

    ☐      this brief has been prepared in a monospaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style].

November 20, 2014

s/ Lisa M. Freeman

Date

***ATTORNEY NAME***

49

# ADDENDUM
### Circuit Rule 28-2.7

**28 U.S.C. § 1332**
**28 U.S.C. § 1441**
**28 U.S.C. § 1446**
**Cal. Bus. & Prof. Code § 17200**
**Cal. Civ. Code § 2923.6**

*Tel. Co.,* 16 S.Ct. 506, 161 U.S. 96, 40 L.Ed. 630; and *Halt v. Indiana Manufacturing Co.,* 1900, 20 S.Ct. 272, 176 U.S. 68, 44 L.Ed. 374.

Words "all civil actions" were substituted for "all suits of a civil nature, at common law or in equity" to conform with Rule 2 of the Federal Rules of Civil Procedure.

Words "or treaties" were substituted for "or treaties made, or which shall be made under their authority," for purposes of brevity.

The remaining provisions of section 41(1) of title 28, U.S.C., 1940 ed., are incorporated in sections 1332, 1341, 1342, 1345, 1354, and 1359 of this title.

Changes were made in arrangement and phraseology.

AMENDMENTS

1980—Pub. L. 96-486 struck out "; amount in controversy; costs" in section catchline, struck out minimum amount in controversy requirement of $10,000 for original jurisdiction in federal question cases which necessitated striking the exception to such required minimum amount that authorized original jurisdiction in actions brought against the United States, any agency thereof, or any officer or employee thereof in an official capacity, struck out provision authorizing the district court except where express provision therefore was made in a federal statute to deny costs to a plaintiff and in fact impose such costs upon such plaintiff where plaintiff was adjudged to be entitled to recover less than the required amount in controversy, computed without regard to set-off or counterclaim and exclusive of interests and costs, and struck out existing subsection designations.

1976—Subsec. (a). Pub. L. 94-574 struck out $10,000 jurisdictional amount where action is brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity.

1958—Pub. L. 85-554 included costs in section catchline, designated existing provisions as subsec. (a), substituted "$10,000" for "$3,000", and added subsec. (b).

EFFECTIVE DATE OF 1980 AMENDMENT; APPLICABILITY

Section 4 of Pub. L. 96-486 provided: "This Act [amending this section and section 2072 of Title 15, Commerce and Trade, and enacting provisions set out as a note under section 1 of this title] shall apply to any civil action pending on the date of enactment of this Act [Dec. 1, 1980]."

EFFECTIVE DATE OF 1958 AMENDMENT

Section 3 of Pub. L. 85-554 provided that: "This Act [amending this section and sections 1332 and 1345 of this title] shall apply only in the case of actions commenced after the date of the enactment of this Act [July 25, 1958]."

## § 1332. Diversity of citizenship; amount in controversy; costs

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—

   (1) citizens of different States;

   (2) citizens of a State and citizens or subjects of a foreign state;

   (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

   (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

For the purposes of this section, section 1335, and section 1441, an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled.

(b) Except when express provision therefor is otherwise made in a statute of the United States, where the plaintiff who files the case originally in the Federal courts is finally adjudged to be entitled to recover less than the sum or value of $75,000, computed without regard to any setoff or counterclaim to which the defendant may be adjudged to be entitled, and exclusive of interest and costs, the district court may deny costs to the plaintiff and, in addition, may impose costs on the plaintiff.

(c) For the purposes of this section and section 1441 of this title—

   (1) a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business, except that in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business; and

   (2) the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent, and the legal representative of an infant or incompetent shall be deemed to be a citizen only of the same State as the infant or incompetent.

(d)(1) In this subsection—

   (A) the term "class" means all of the class members in a class action;

   (B) the term "class action" means any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action;

   (C) the term "class certification order" means an order issued by a court approving the treatment of some or all aspects of a civil action as a class action; and

   (D) the term "class members" means the persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action.

   (2) The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which—

   (A) any member of a class of plaintiffs is a citizen of a State different from any defendant;

   (B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or

   (C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state.

   (3) A district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction under paragraph (2) over a class action in which greater than one-third but less than two-thirds

of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed based on consideration of—

(A) whether the claims asserted involve matters of national or interstate interest;

(B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;

(C) whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;

(D) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;

(E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and

(F) whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

(4) A district court shall decline to exercise jurisdiction under paragraph (2)—

(A)(i) over a class action in which—

(I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

(II) at least 1 defendant is a defendant—

(aa) from whom significant relief is sought by members of the plaintiff class;

(bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

(cc) who is a citizen of the State in which the action was originally filed; and

(III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

(ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons; or

(B) two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.

(5) Paragraphs (2) through (4) shall not apply to any class action in which—

(A) the primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief; or

(B) the number of members of all proposed plaintiff classes in the aggregate is less than 100.

(6) In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

(7) Citizenship of the members of the proposed plaintiff classes shall be determined for purposes of paragraphs (2) through (6) as of the date of filing of the complaint or amended complaint, or, if the case stated by the initial pleading is not subject to Federal jurisdiction, as of the date of service by plaintiffs of an amended pleading, motion, or other paper, indicating the existence of Federal jurisdiction.

(8) This subsection shall apply to any class action before or after the entry of a class certification order by the court with respect to that action.

(9) Paragraph (2) shall not apply to any class action that solely involves a claim—

(A) concerning a covered security as defined under section 16(f)(3)[1] of the Securities Act of 1933 (15 U.S.C. 78p(f)(3)[2]) and section 28(f)(5)(E) of the Securities Exchange Act of 1934 (15 U.S.C. 78bb(f)(5)(E));

(B) that relates to the internal affairs or governance of a corporation or other form of business enterprise and that arises under or by virtue of the laws of the State in which such corporation or business enterprise is incorporated or organized; or

(C) that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security (as defined under section 2(a)(1) of the Securities Act of 1933 (15 U.S.C. 77b(a)(1)) and the regulations issued thereunder).

(10) For purposes of this subsection and section 1453, an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized.

(11)(A) For purposes of this subsection and section 1453, a mass action shall be deemed to be a class action removable under paragraphs (2) through (10) if it otherwise meets the provisions of those paragraphs.

(B)(i) As used in subparagraph (A), the term "mass action" means any civil action (except a civil action within the scope of section 1711(2)) in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a).

(ii) As used in subparagraph (A), the term "mass action" shall not include any civil action in which—

(I) all of the claims in the action arise from an event or occurrence in the State in which the action was filed, and that allegedly resulted in injuries in that State or in States contiguous to that State;

(II) the claims are joined upon motion of a defendant;

(III) all of the claims in the action are asserted on behalf of the general public (and not

---

[1] So in original. Probably should be preceded by "section".

[2] So in original. Probably should be "77p(f)(3)".

on behalf of individual claimants or members of a purported class) pursuant to a State statute specifically authorizing such action; or

(IV) the claims have been consolidated or coordinated solely for pretrial proceedings.

(C)(i) Any action(s) removed to Federal court pursuant to this subsection shall not thereafter be transferred to any other court pursuant to section 1407, or the rules promulgated thereunder, unless a majority of the plaintiffs in the action request transfer pursuant to section 1407.

(ii) This subparagraph will not apply—

(I) to cases certified pursuant to rule 23 of the Federal Rules of Civil Procedure; or

(II) if plaintiffs propose that the action proceed as a class action pursuant to rule 23 of the Federal Rules of Civil Procedure.

(D) The limitations periods on any claims asserted in a mass action that is removed to Federal court pursuant to this subsection shall be deemed tolled during the period that the action is pending in Federal court.

(e) The word "States", as used in this section, includes the Territories, the District of Columbia, and the Commonwealth of Puerto Rico.

(June 25, 1948, ch. 646, 62 Stat. 930; July 26, 1956, ch. 740, 70 Stat. 658; Pub. L. 85–554, §2, July 25, 1958, 72 Stat. 415; Pub. L. 88–439, §1, Aug. 14, 1964, 78 Stat. 445; Pub. L. 94–583, §3, Oct. 21, 1976, 90 Stat. 2891; Pub. L. 100–702, title II, §§201(a), 202(a), 203(a), Nov. 19, 1988, 102 Stat. 4646; Pub. L. 104–317, title II, §205(a), Oct. 19, 1996, 110 Stat. 3850; Pub. L. 109–2, §4(a), Feb. 18, 2005, 119 Stat. 9.)

HISTORICAL AND REVISION NOTES

Based on title 28, U.S.C., 1940 ed., §41(1) (Mar. 3, 1911, ch. 231, §24, par. 1, 36 Stat. 1091; May 14, 1934, ch. 283, §1, 48 Stat. 775; Aug. 21, 1937, ch. 726, §1, 50 Stat. 738; Apr. 20, 1940, ch. 117, 54 Stat. 143).

Other provisions of section 41(1) of title 28, U.S.C., 1940 ed., are incorporated in sections 1331, 1341, 1342, 1345, 1354, and 1359 of this title. (See reviser's notes under said sections.)

Jurisdiction conferred by other sections of this chapter, except section 1335, is not dependent upon diversity of citizenship. (See annotations under former section 41 of title 28, U.S.C.A., and 35 C.J.S., p. 833 et seq. §§30–43. See, also, reviser's note under section 1331 of this title.) As to citizenship of bank where jurisdiction depends upon diversity of citizenship, see section 1348 of this title.

Words "all civil actions" were substituted for "all suits of a civil nature, at common law or in equity" in order to conform to Rule 2 of the Federal Rules of Civil Procedure.

Words "or citizens of the District of Columbia, Territory of Hawaii, or Alaska, and any State or Territory" which were inserted by the amendatory act April 20, 1940, are omitted. The word "States" is defined in this section and enumeration of the references is unnecessary.

The revised section conforms with the views of Philip F. Herrick, United States Attorney, Puerto Rico, who observed that the act of April 20, 1940, permitted action between a citizen of Hawaii and of Puerto Rico, but not between a citizen of New York and Puerto Rico, in the district court.

This changes the law to insure uniformity. The 1940 amendment applied only to the provision as to controversies between "citizens of different States." The new definition in subsection (b) extends the 1940 amendment to apply to controversies between citizens of the Territories or the District of Columbia, and foreign states or citizens or subjects thereof.

The diversity of citizenship language of section 41(1) of title 28, U.S.C., 1940 ed., as amended in 1940, was described as ambiguous in McGarry v. City of Bethlehem, 45 F.Supp. 385, 386. In that case the 1940 amendment was held unconstitutional insofar as it affected the District of Columbia. However, two other district courts upheld the amendment. Winkler v. Daniels, D.C.Va. 1942, 43 F.Supp. 265; Glaeser v. Acacia Mutual Life Ass'n., D.C.Cal. 1944, 55 F.Supp. 925.

This section is intended to cover all diversity of citizenship instances in civil actions in accordance with the judicial construction of the language in the original section 41(1) of title 28, U.S.C., 1940 ed. Therefore, the revised language covers civil actions between—

Citizens of a State, and citizens of other States and foreign states or citizens or subjects thereof;

Citizens of a Territory or the District of Columbia, and foreign states or citizens or subjects thereof;

Citizens of different States;

Citizens of different Territories;

Citizens of a State, and citizens of Territories;

Citizens of a State or Territory, and citizens of the District of Columbia;

Citizens of a State, and foreign states or citizens or subjects thereof.

The revised section removes an uncertainty referred to in the McGarry case, supra, as to whether Congress intended to permit citizens of the Territories or the District of Columbia to sue a State or Territory itself rather than the citizens thereof. The court observed that "Congress could hardly have had such intention."

The sentence "The foregoing provisions as to the sum or value of the matter in controversy shall not be construed to apply to any of the cases mentioned in the succeeding paragraphs of this section" was omitted as unnecessary. Those paragraphs are (2)–(28) of said section 41 of title 28, U.S.C., 1940 ed., which are revised and incorporated in this chapter and, except for those relating to actions against the United States and interpleader, contains no provision as to a sum or value necessary to confer jurisdiction. Consequently the omitted sentence is covered by excluding such requirement.

Section 41(1) of title 28, U.S.C., 1940 ed., as originally enacted, purported to include all jurisdictional provisions relating to the district courts. Subsequently, many special jurisdictional provisions were examined and incorporated in other titles of the U.S.C., 1940 ed., as follows:

| Title | Section |
|---|---|
| 7 | .209 |
| 7 | .210 |
| 7 | .216 |
| 7 | .292 |
| 7 | .499g |
| 7 | .608a(6) |
| 7 | .608c(15)(B) |
| 7 | .610(b)(2) |
| 7 | .648 |
| 7 | .1175 |
| 7 | .1365–1367 |
| 7 | .1376 |
| 7 | .1508(c) |
| 8 | .164 |
| 8 | .701 |
| 8 | .903 |
| 9 | .4 |
| 9 | .8 |
| 9 | .9 |
| 11 | .11(a) |
| 11 | .46 |
| 11 | .205(a)(f) |
| 11 | .401 |
| 11 | .511 |
| 11 | .512 |
| 11 | .514–516 |
| 11 | .711 |
| 11 | .712 |
| 11 | .811 |
| 11 | .812 |

| Title | Section |
|---|---|
| 11 | 1011 |
| 11 | 1012 |
| 11 | 1013 |
| 11 | 1200 |
| 12 | 93 |
| 12 | 195 |
| 12 | 632 |
| 15 | 4 |
| 15 | 9 |
| 15 | 15 |
| 15 | 25 |
| 15 | 26 |
| 15 | 31 |
| 15 | 53 |
| 15 | 68e |
| 15 | 77t |
| 15 | 77v |
| 15 | 77vvv |
| 15 | 78u(e) |
| 15 | 78u(f) |
| 15 | 78aaa |
| 15 | 79k(d)(e) |
| 15 | 79r(f)(g) |
| 15 | 80a–25 |
| 15 | 80a–34 |
| 15 | 80a–35 |
| 15 | 80a–41(c)(e) |
| 15 | 80a–43 |
| 15 | 80b–14 |
| 15 | 97 |
| 15 | 99 |
| 15 | 433 |
| 15 | 715d(c) |
| 15 | 715i |
| 15 | 717s |
| 15 | 717u |
| 16 | 10 |
| 16 | 583e |
| 16 | 820 |
| 16 | 825m |
| 16 | 825n |
| 16 | 825p |
| 17 | 26 |
| 17 | 34 |
| 21 | 193 |
| 21 | 332 |
| 21 | 355 |
| 25 | 314 |
| 25 | 345 |
| 26 | 3633 |
| 26 | 3800 |
| 27 | 207 |
| 29 | 101 |
| 29 | 103–109 |
| 29 | 160(e) |
| 29 | 216 |
| 29 | 217 |
| 30 | 188 |
| 31 | 232 |
| 33 | 495 |
| 33 | 918 |
| 33 | 921 |
| 35 | 63 |
| 35 | 66 |
| 35 | 67 |
| 35 | 72a |
| 35 | 90 |
| 38 | 445 |
| 40 | 257 |
| 40 | 270b |
| 40 | 361 |
| 41 | 113(b)(2) |
| 42 | 405(c)(5)(g) |
| 43 | 546 |
| 43 | 1062 |
| 45 | 56 |
| 45 | 88 |
| 45 | 89 |
| 45 | 153(p) |
| 45 | 159 |
| 45 | 185 |
| 45 | 228j4 |
| 45 | 228k |
| 45 | 268 |
| 45 | 355(f) |
| 46 | 597 |
| 46 | 688 |
| 46 | 711 |
| 46 | 741 et seq. |
| 46 | 781 et seq. |
| 46 | 941(c) |
| 46 | 951 |
| 46 | 954 |
| 46 | 1114(c) |
| 46 | 1128d |
| 47 | 11 |
| 47 | 13 |
| 47 | 33 |
| 47 | 36 |
| 47 | 207 |
| 47 | 401 |
| 47 | 406 |
| 47 | 407 |
| 48 | 242 |
| 48 | 245 |
| 49 | 5(8) |
| 49 | 9 |
| 49 | 16(2) |
| 49 | 16(9) |
| 49 | 16(12) |
| 49 | 17(9) |
| 49 | 19a(l) |
| 49 | 20(9) |
| 49 | 23 |
| 49 | 26(h) |
| 49 | 41(1)(3) |
| 49 | 43 |
| 49 | 181(b)(c) |
| 49 | 305(g) |
| 49 | 322(b) |
| 49 | 647 |
| 49 | 916 |
| 49 | 1017 |
| 49 | 1021 |
| 50 | 23 |
| D.C. Code | 11–305—11–307 |
| D.C. Code | 11–309 |
| D.C. Code | 11–324 |

## REFERENCES IN TEXT

Rule 23 of the Federal Rules of Civil Procedure, referred to in subsec. (d)(1)(B), (11)(C)(ii), is set out in the Appendix to this title.

## AMENDMENTS

2005—Subsecs. (d), (e). Pub. L. 109–2 added subsec. (d) and redesignated former subsec. (d) as (e).

1996—Subsecs. (a), (b). Pub. L. 104–317 substituted "$75,000" for "$50,000".

1988—Subsec. (a). Pub. L. 100–702, §201(a), substituted "$50,000" for "$10,000" in introductory text.

Pub. L. 100–702, §203(a), inserted at end "For the purposes of this section, section 1335, and section 1441, an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled."

Subsec. (b). Pub. L. 100–702, §201(a), substituted "$50,000" for "$10,000".

Subsec. (c). Pub. L. 100–702, §202(a), amended subsec. (c) generally. Prior to amendment, subsec. (c) read as follows: "For the purposes of this section and section 1441 of this title, a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business: *Provided further,* That in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which ac-

tion the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business.''

1976—Subsec. (a)(2). Pub. L. 94–583 substituted "and citizens or subjects of a foreign state;" for '', and foreign states or citizens or subjects thereof; and''.

Subsec. (a)(3). Pub. L. 94–583 substituted "citizens or subjects of a foreign state are additional parties; and'' for "foreign states or citizens or subjects thereof are additional parties''.

Subsec. (a)(4). Pub. L. 94–583 added par. (4).

1964—Subsec. (c). Pub. L. 88–439 inserted proviso deeming an insurer of liability insurance, in an action to which the insurer is not joined as a party-defendant, a citizen, of the State of which the insured is a citizen, as well as the State the insurer has been incorporated by and the State where it has its principal place of business.

1958—Pub. L. 85–554 included costs in section catchline.

Subsec. (a). Pub. L. 85–554 substituted ''$10,000'' for ''$3,000''.

Subsecs. (b) to (d). Pub. L. 85–554 added subsecs. (b) and (c) and redesignated former subsec. (b) as (d).

1956—Subsec. (b). Act July 26, 1956, included the Commonwealth of Puerto Rico.

#### EFFECTIVE DATE OF 2005 AMENDMENT

Pub. L. 109–2, §9, Feb. 18, 2005, 119 Stat. 14, provided that: ''The amendments made by this Act [enacting chapter 114 and section 1453 of this title and amending this section and sections 1335 and 1603 of this title] shall apply to any civil action commenced on or after the date of enactment of this Act [Feb. 18, 2005].''

#### EFFECTIVE DATE OF 1996 AMENDMENT

Section 205(b) of Pub. L. 104–317 provided that: ''The amendment made by this section [amending this section] shall take effect 90 days after the date of enactment of this Act [Oct. 19, 1996].''

#### EFFECTIVE DATE OF 1988 AMENDMENT

Section 201(b) of title II of Pub. L. 100–702 provided that: ''The amendments made by this section [amending this section] shall apply to any civil action commenced on or after the 180th day after the date of enactment of this title [Nov. 19, 1988].''

Section 202(b) of title II of Pub. L. 100–702 provided that: ''The amendment made by this section [amending this section] shall apply to any civil action commenced in or removed to a States district court on or after the 180th day after the date of enactment of this title [Nov. 19, 1988].''

Section 203(b) of title II of Pub. L. 100–702 provided that: ''The amendment made by this section [amending this section] shall apply to claims in civil actions commenced in or removed to the United States district courts on or after the 180th day after the date of enactment of this title [Nov. 19, 1988].''

#### EFFECTIVE DATE OF 1976 AMENDMENT

Amendment by Pub. L. 94–583 effective 90 days after Oct. 21, 1976, see section 8 of Pub. L. 94–583, set out as an Effective Date note under section 1602 of this title.

#### EFFECTIVE DATE OF 1964 AMENDMENT

Section 2 of Pub. L. 88–439 provided that: ''The amendment made by this Act to section 1332(c), title 28, United States Code, applies only to causes of action arising after the date of enactment of this Act [Aug. 14, 1964].''

#### EFFECTIVE DATE OF 1958 AMENDMENT

Amendment by Pub. L. 85–554 applicable only in the case of actions commenced after July 25, 1958, see section 3 of Pub. L. 85–554, set out as a note under section 1331 of this title.

### § 1333. Admiralty, maritime and prize cases

The district courts shall have original jurisdiction, exclusive of the courts of the States, of:

(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.

(2) Any prize brought into the United States and all proceedings for the condemnation of property taken as prize.

(June 25, 1948, ch. 646, 62 Stat. 931; May 24, 1949, ch. 139, §79, 63 Stat. 101.)

#### HISTORICAL AND REVISION NOTES

##### 1948 ACT

Based on title 28, U.S.C., 1940 ed., §§41(3) and 371 (3), (4) (Mar. 3, 1911, ch. 231, §§24, par. 3, 256, pars. 3, 4, 36 Stat. 1091, 1160; Oct. 6, 1917, ch. 97, §§1, 2, 40 Stat. 395; June 10, 1922, ch. 216, §§1, 2, 42 Stat. 634).

Section consolidates certain provisions of sections 41(3), 371(3) and 371(4) of title 28, U.S.C., 1940 ed. Other provisions of sections 41(3) and 371(4), relating to seizures, are incorporated in section 1356 of this title. (See reviser's note thereunder.)

The ''saving to suitors'' clause in sections 41(3) and 371(3) of title 28, U.S.C., 1940 ed., was changed by substituting the words ''any other remedy to which he is otherwise entitled'' for the words ''the right of a common law remedy where the common law is competent to give it.'' The substituted language is simpler and more expressive of the original intent of Congress and is in conformity with Rule 2 of the Federal Rules of Civil Procedure abolishing the distinction between law and equity.

Provisions of section 41(3) of title 28, U.S.C., 1940 ed., based on the 1917 and 1922 amendments, relating to remedies under State workmen's compensation laws, were deleted. Such amendments were held unconstitutional by the Supreme Court. (See *Knickerbocker Ice Co. v. Stewart*, 1920, 40 S.Ct. 438, 253 U.S. 149, 64 L.Ed. 834, and *State of Washington v. W. C. Dawson & Co.*, 1924, 44 S.Ct. 302, 264 U.S. 219, 68 L.Ed. 646.)

Words ''libellant or petitioner'' were substituted for ''suitors'' to describe moving party in admiralty cases.

Changes were made in phraseology.

##### 1949 ACT

This section amends section 1333(a)(1) of title 28, U.S.C., by substituting ''suitors'' for ''libellant or petitioner'' to conform to the language of the law in existence at the time of the enactment of the revision of title 28.

#### AMENDMENTS

1949—Subd. (1). Act May 24, 1949, substituted ''suitors'' for ''libellant or petitioner''.

### § 1334. Bankruptcy cases and proceedings

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

(c)(1) Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice,

### § 1413. Venue of cases under chapter 5 of title 3

Notwithstanding the preceding provisions of this chapter, a civil action under section 1346(g) may be brought in the United States district court for the district in which the employee is employed or in the United States District Court for the District of Columbia.

(Added Pub. L. 104–331, § 3(b)(2)(A), Oct. 26, 1996, 110 Stat. 4069.)

CODIFICATION

Pub. L. 104–331, § 3(b)(2)(A), which directed the amendment of chapter 37 of this title by adding this section at end, was executed by adding this section at the end of chapter 87 of this title to reflect the probable intent of Congress.

EFFECTIVE DATE

Section effective Oct. 1, 1997, see section 3(d) of Pub. L. 104–331, set out as a note under section 1296 of this title.

## CHAPTER 89—DISTRICT COURTS; REMOVAL OF CASES FROM STATE COURTS

Sec.
1441. Actions removable generally.
1442. Federal officers and agencies sued or prosecuted.[1]
1442a. Members of armed forces sued or prosecuted.
1443. Civil rights cases.
1444. Foreclosure action against United States.
1445. Nonremovable actions.
1446. Procedure for removal.
1447. Procedure after removal generally.
1448. Process after removal.
1449. State court record supplied.
1450. Attachment or sequestration; securities.
1451. Definitions.
1452. Removal of claims related to bankruptcy cases.
1453. Removal of class actions.

AMENDMENTS

2005—Pub. L. 109–2, § 5(b), Feb. 18, 2005, 119 Stat. 13, added item 1453.

1996—Pub. L. 104–317, title II, § 206(7), Oct. 19, 1996, 110 Stat. 3850, inserted "and agencies" after "officers" in item 1442.

1984—Pub. L. 98–353, title I, § 103(b), July 10, 1984, 98 Stat. 335, added item 1452.

1970—Pub. L. 91–358, title I, § 172(d)(2), July 29, 1970, 84 Stat. 591, added item 1451.

1958—Pub. L. 85–554, § 5(b), July 25, 1958, 72 Stat. 416, substituted "Nonremovable actions" for "Carriers; non-removable actions" in item 1445.

1956—Act Aug. 10, 1956, ch. 1041, § 19(b), 70A Stat. 627, added item 1442a.

### § 1441. Actions removable generally

(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

(c) Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates.

(d) Any civil action brought in a State court against a foreign state as defined in section 1603(a) of this title may be removed by the foreign state to the district court of the United States for the district and division embracing the place where such action is pending. Upon removal the action shall be tried by the court without jury. Where removal is based upon this subsection, the time limitations of section 1446(b) of this chapter may be enlarged at any time for cause shown.

(e)(1) Notwithstanding the provisions of subsection (b) of this section, a defendant in a civil action in a State court may remove the action to the district court of the United States for the district and division embracing the place where the action is pending if—

(A) the action could have been brought in a United States district court under section 1369 of this title; or

(B) the defendant is a party to an action which is or could have been brought, in whole or in part, under section 1369 in a United States district court and arises from the same accident as the action in State court, even if the action to be removed could not have been brought in a district court as an original matter.

The removal of an action under this subsection shall be made in accordance with section 1446 of this title, except that a notice of removal may also be filed before trial of the action in State court within 30 days after the date on which the defendant first becomes a party to an action under section 1369 in a United States district court that arises from the same accident as the action in State court, or at a later time with leave of the district court.

(2) Whenever an action is removed under this subsection and the district court to which it is removed or transferred under section 1407(j) has made a liability determination requiring further proceedings as to damages, the district court shall remand the action to the State court from which it had been removed for the determination of damages, unless the court finds that, for the convenience of parties and witnesses and in the interest of justice, the action should be retained for the determination of damages.

(3) Any remand under paragraph (2) shall not be effective until 60 days after the district court has issued an order determining liability and has certified its intention to remand the removed action for the determination of damages. An appeal with respect to the liability deter-

---

[1] So in original. Does not conform to section catchline.

mination of the district court may be taken during that 60-day period to the court of appeals with appellate jurisdiction over the district court. In the event a party files such an appeal, the remand shall not be effective until the appeal has been finally disposed of. Once the remand has become effective, the liability determination shall not be subject to further review by appeal or otherwise.

(4) Any decision under this subsection concerning remand for the determination of damages shall not be reviewable by appeal or otherwise.

(5) An action removed under this subsection shall be deemed to be an action under section 1369 and an action in which jurisdiction is based on section 1369 of this title for purposes of this section and sections 1407, 1697, and 1785 of this title.

(6) Nothing in this subsection shall restrict the authority of the district court to transfer or dismiss an action on the ground of inconvenient forum.

(f) The court to which a civil action is removed under this section is not precluded from hearing and determining any claim in such civil action because the State court from which such civil action is removed did not have jurisdiction over that claim.

(June 25, 1948, ch. 646, 62 Stat. 937; Pub. L. 94–583, §6, Oct. 21, 1976, 90 Stat. 2898; Pub. L. 99–336, §3(a), June 19, 1986, 100 Stat. 637; Pub. L. 100–702, title X, §1016(a), Nov. 19, 1988, 102 Stat. 4669; Pub. L. 101–650, title III, §312, Dec. 1, 1990, 104 Stat. 5114; Pub. L. 102–198, §4, Dec. 9, 1991, 105 Stat. 1623; Pub. L. 107–273, div. C, title I, §11020(b)(3), Nov. 2, 2002, 116 Stat. 1827.)

### HISTORICAL AND REVISION NOTES

Based on title 28, U.S.C., 1940 ed., §§71, 114 (Mar. 3, 1911, ch. 231, §§28, 53, 36 Stat. 1094, 1101; Jan. 20, 1914, ch. 11, 38 Stat. 278; Jan. 31, 1928, ch. 14, §1, 45 Stat. 54).

Section consolidates removal provisions of sections 71 and 114 of title 28, U.S.C., 1940 ed., and is intended to resolve ambiguities and conflicts of decisions.

Phrases such as "in suits of a civil nature, at law or in equity," the words "case," "cause," "suit," and the like have been omitted and the words "civil action" substituted in harmony with Rules 2 and 81(c) of the Federal Rules of Civil Procedure.

Ambiguous phrases such as "the District Court of the United States for the proper district" have been clarified by the substitution of the phrase "the district and division embracing the place where such action is pending." (See General Investment Co. v. Lake Shore & M.S. Ry. Co., 1922, 43 S.Ct. 106, 112, 260 U.S. 261, 67 L.Ed. 244 and cases cited therein.)

All the provisions with reference to removal of controversies between citizens of different States because of inability, from prejudice or local influence, to obtain justice, have been discarded. These provisions, born of the bitter sectional feelings engendered by the Civil War and the Reconstruction period, have no place in the jurisprudence of a nation since united by three wars against foreign powers. Indeed, the practice of removal for prejudice or local influence has not been employed much in recent years.

Subsection (c) has been substituted for the provision in section 71 of title 28, U.S.C., 1940 ed.. "and when in any suit mentioned in this section, there shall be a controversy which is wholly between citizens of different States, and which can be fully determined as between them, then either one or more of the defendants actually interested in such controversy may remove said suit into the district court of the United States."

This quoted language has occasioned much confusion. The courts have attempted to distinguish between separate and separable controversies, a distinction which is sound in theory but illusory in substance. (See 41 Harv. L. Rev. 1048; 35 Ill. L. Rev. 576.)

Subsection (c) permits the removal of a separate cause of action but not of a separable controversy unless it constitutes a separate and independent claim or cause of action within the original jurisdiction of United States District Courts. In this respect it will somewhat decrease the volume of Federal litigation.

Rules 18, 20, and 23 of the Federal Rules of Civil Procedure permit the most liberal joinder of parties, claims, and remedies in civil actions. Therefore there will be no procedural difficulty occasioned by the removal of the entire action. Conversely, if the court so desires, it may remand to the State court all nonremovable matters.

The provisions of section 71 of title 28, U.S.C., 1940 ed., with respect to removal of actions under the Federal Employer's Liability Act (U.S.C., 1940 ed., title 45, Railroads, §§51–60) and actions against a carrier for loss, damage, or delay to shipments under section 20 of title 49, U.S.C., 1940 ed., Transportation, are incorporated in section 1445 of this title.

### AMENDMENTS

2002—Subsecs. (e), (f). Pub. L. 107–273 added subsec. (e), redesignated former subsec. (e) as (f), and substituted "The court to which a civil action is removed under this section" for "The court to which such civil action is removed".

1991—Subsec. (c). Pub. L. 102–198 struck out comma after "title" and substituted "may" for "may" before "remand".

1990—Subsec. (c). Pub. L. 101–650 substituted "within the jurisdiction conferred by section 1331 of this title" for ", which would be removable if sued upon alone" and "may remand all matters in which State law predominates" for "remand all matters not otherwise within its original jurisdiction".

1988—Subsec. (a). Pub. L. 100–702 inserted at end "For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded."

1986—Subsec. (e). Pub. L. 99–336 added subsec. (e).

1976—Subsec. (d). Pub. L. 94–583 added subsec. (d).

### EFFECTIVE DATE OF 2002 AMENDMENT

Amendment by Pub. L. 107–273 applicable to a civil action if the accident giving rise to the cause of action occurred on or after the 90th day after Nov. 2, 2002, see section 11020(c) of Pub. L. 107–273, set out as an Effective Date note under section 1369 of this title.

### EFFECTIVE DATE OF 1986 AMENDMENT

Section 3(b) of Pub. L. 99–336 provided that: "The amendment made by this section [amending this section] shall apply with respect to claims in civil actions commenced in State courts on or after the date of the enactment of this section [June 19, 1986]."

### EFFECTIVE DATE OF 1976 AMENDMENT

Amendment by Pub. L. 94–583 effective 90 days after Oct. 21, 1976, see section 8 of Pub. L. 94–583, set out as an Effective Date note under section 1602 of this title.

## § 1442. Federal officers or agencies sued or prosecuted

(a) A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) The United States or any agency thereof or any officer (or any person acting under that

## § 1445. Nonremovable actions

(a) A civil action in any State court against a railroad or its receivers or trustees, arising under sections 1–4 and 5–10 of the Act of April 22, 1908 (45 U.S.C. 51–54, 55–60), may not be removed to any district court of the United States.

(b) A civil action in any State court against a carrier or its receivers or trustees to recover damages for delay, loss, or injury of shipments, arising under section 11706 or 14706 of title 49, may not be removed to any district court of the United States unless the matter in controversy exceeds $10,000, exclusive of interest and costs.

(c) A civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States.

(d) A civil action in any State court arising under section 40302 of the Violence Against Women Act of 1994 may not be removed to any district court of the United States.

(June 25, 1948, ch. 646, 62 Stat. 939; Pub. L. 85–554, §5, July 25, 1958, 72 Stat. 415; Pub. L. 95–473, §2(a)(3)(A), Oct. 17, 1978, 92 Stat. 1465; Pub. L. 95–486, §9(b), Oct. 20, 1978, 92 Stat. 1634; Pub. L. 103–322, title IV, §40302(e)(5), Sept. 13, 1994, 108 Stat. 1942; Pub. L. 104–88, title III, §305(b), Dec. 29, 1995, 109 Stat. 944; Pub. L. 104–287, §3, Oct. 11, 1996, 110 Stat. 3388.)

### HISTORICAL AND REVISION NOTES

Based on title 28, U.S.C., 1940 ed., §71 (Mar. 3, 1911, ch. 231, §28, 36 Stat. 1094; Jan. 20, 1914, ch. 11, 38 Stat. 278; Jan. 31, 1928, ch. 14, §1, 45 Stat. 54).

The words "or its receivers or trustees" were inserted in both subsections to make clear that nonremovable actions against a carrier do not become removable under section 1442 of this title when filed against such receivers or trustees.

This was the unquestioned rule prior to the act of Aug. 23, 1916, ch. 399, 39 Stat. 532, amending section 76 of title 28, U.S.C., 1940 ed., and permitting removal of actions against officers of United States courts. The cases are in conflict as to whether under that amendment the case becomes removable when the carrier is in receivership or undergoing reorganization. The revised section resolves the conflict by denying the right of removal to receivers and trustees where it would be nonexistent if the carrier were the party defendant. Thus the subject matter rather than legalistic distinctions as to the identity of the parties is made determinative consideration.

A reference in section 71 of title 28, U.S.C., 1940 ed., to sections 51–59 of title 45, U.S.C., 1940 ed., Railroads, was changed to "51–60." Such sections 51–59 embraced all of chapter 2 of said title 45 when the law on which such section 71 is based was enacted, but a new section (60) was added in 1939.

Other provisions of section 71 of title 28, U.S.C., 1940 ed., appear in section 1444 of this title.

Changes were made in phraseology.

### REFERENCES IN TEXT

Section 40302 of the Violence Against Women Act of 1994, referred to in subsec. (d), is classified to section 13981 of Title 42, The Public Health and Welfare.

### AMENDMENTS

1996—Subsec. (a). Pub. L. 104–287 substituted "sections 1–4 and 5–10 of the Act of April 22, 1908 (45 U.S.C. 51–54, 55–60)" for "sections 51–60 of Title 45".

1995—Subsec. (b). Pub. L. 104–88 substituted "carrier" for "common carrier" and "11706 or 14706" for "11707".

1994—Subsec. (d). Pub. L. 103–322 added subsec. (d).

1978—Subsec. (b). Pub. L. 95–486 substituted "$10,000" for "$3,000".

Pub. L. 95–473 substituted "section 11707 of title 49" for "section 20 of Title 49".

1958—Pub. L. 85–554 substituted "Nonremovable actions" for "Carriers; nonremovable actions" in section catchline and added subsec. (c).

### EFFECTIVE DATE OF 1996 AMENDMENT

Amendment by Pub. L. 104–287 effective July 5, 1994, see section 8(1) of Pub. L. 104–287, set out as a note under section 5303 of Title 49, Transportation.

### EFFECTIVE DATE OF 1995 AMENDMENT

Amendment by Pub. L. 104–88 effective Jan. 1, 1996, see section 2 of Pub. L. 104–88, set out as an Effective Date note under section 701 of Title 49, Transportation.

### EFFECTIVE DATE OF 1958 AMENDMENT

Amendment by Pub. L. 85–554 applicable only in the case of actions commenced after July 25, 1958, see section 3 of Pub. L. 85–554, set out as a note under section 1331 of this title.

## § 1446. Procedure for removal

(a) A defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

(b) The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

(c)(1) A notice of removal of a criminal prosecution shall be filed not later than thirty days after the arraignment in the State court, or at any time before trial, whichever is earlier, except that for good cause shown the United States district court may enter an order granting the defendant or defendants leave to file the notice at a later time.

(2) A notice of removal of a criminal prosecution shall include all grounds for such removal. A failure to state grounds which exist at the time of the filing of the notice shall constitute a waiver of such grounds, and a second notice may be filed only on grounds not existing at the time of the original notice. For good cause shown, the United States district court may

grant relief from the limitations of this paragraph.

(3) The filing of a notice of removal of a criminal prosecution shall not prevent the State court in which such prosecution is pending from proceeding further, except that a judgment of conviction shall not be entered unless the prosecution is first remanded.

(4) The United States district court in which such notice is filed shall examine the notice promptly. If it clearly appears on the face of the notice and any exhibits annexed thereto that removal should not be permitted, the court shall make an order for summary remand.

(5) If the United States district court does not order the summary remand of such prosecution, it shall order an evidentiary hearing to be held promptly and after such hearing shall make such disposition of the prosecution as justice shall require. If the United States district court determines that removal shall be permitted, it shall so notify the State court in which prosecution is pending, which shall proceed no further.

(d) Promptly after the filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal and the State court shall proceed no further unless and until the case is remanded.

(e) If the defendant or defendants are in actual custody on process issued by the State court, the district court shall issue its writ of habeas corpus, and the marshal shall thereupon take such defendant or defendants into his custody and deliver a copy of the writ to the clerk of such State court.

(f) With respect to any counterclaim removed to a district court pursuant to section 337(c) of the Tariff Act of 1930, the district court shall resolve such counterclaim in the same manner as an original complaint under the Federal Rules of Civil Procedure, except that the payment of a filing fee shall not be required in such cases and the counterclaim shall relate back to the date of the original complaint in the proceeding before the International Trade Commission under section 337 of that Act.

(June 25, 1948, ch. 646, 62 Stat. 939; May 24, 1949, ch. 139, § 83, 63 Stat. 101; Pub. L. 89–215, Sept. 29, 1965, 79 Stat. 887; Pub. L. 95–78, § 3, July 30, 1977, 91 Stat. 321; Pub. L. 100–702, title X, § 1016(b), Nov. 19, 1988, 102 Stat. 4669; Pub. L. 102–198, § 10(a), Dec. 9, 1991, 105 Stat. 1626; Pub. L. 103–465, title III, § 321(b)(2), Dec. 8, 1994, 108 Stat. 4946; Pub. L. 104–317, title VI, § 603, Oct. 19, 1996, 110 Stat. 3857.)

HISTORICAL AND REVISION NOTES

1948 ACT

Based on title 28, U.S.C., 1940 ed., §§ 72, 74, 75, 76 (May 3, 1911, ch. 231, §§ 29, 31, 32, 33, 36 Stat. 1095, 1097; Aug. 23, 1916, ch. 399, 39 Stat. 532; July 30, 1977, Pub. L. 95–78, § 3, 91 Stat. 321.)

Section consolidates portions of sections 74, 75, and 76 with section 72 of title 28, U.S.C., 1940 ed., with important changes of substance and phraseology.

Subsection (a), providing for the filing of the removal petition in the district court, is substituted for the requirement of sections 72 and 74 of title 28, U.S.C., 1940

ed., that the petition be filed in the State court. This conforms to the method prescribed by section 76 of title 28, U.S.C., 1940 ed., and to the recommendation of United States District Judges Calvin W. Chesnut and T. Waties Warring approved by the Committee on the Judicial Conference on the Revision of the Judicial Code.

Subsection (b) makes uniform the time for filing petitions to remove all civil actions within twenty days after commencement of action or service of process whichever is later, instead of "at any time before the defendant is required by the laws of the State or the rule of the State court in which such suit is brought to answer or plead" as required by section 72 of title 28, U.S.C., 1940 ed. As thus revised, the section will give adequate time and operate uniformly throughout the Federal jurisdiction. The provisions of sections 74 and 76 of title 28, U.S.C., 1940 ed., for filing at any time "before trial or final hearing" in civil rights cases and cases involving revenue officers, court officers and officers of either House of Congress were omitted.

Subsection (c) embodies the provisions of sections 74 and 76 of title 28, U.S.C., 1940 ed., for filing the removal petition before trial and makes them applicable to all criminal prosecutions but not to civil actions. This provision was retained to protect Federal officers enforcing revenue or criminal laws from being rushed to trial in State courts before petition for removal could be filed. Words "or final hearing" following the words "before trial," were omitted for purposes of clarity and simplification of procedure.

The provision of said section 76 of title 28, U.S.C., 1940 ed., for certificate of counsel that he has examined the proceedings and carefully inquired into all matters set forth in the petition and believes them to be true, was omitted as unnecessary and inconsistent with Rule 11 of the Federal Rules of Civil Procedure.

Subsection (d) is derived from sections 72 and 74 of title 28, U.S.C., 1940 ed., but the requirement for cost bond is limited to civil actions in conformity with the more enlightened trend of modern procedure to remove all unnecessary impediments to the administration of criminal justice. Provisions of said section 72 as to the conditions of the bond were rewritten because inappropriate when the petition for removal is filed in the Federal court.

Subsection (e) provides for notice to the adverse parties and for the filing in the State court of a copy of the petition for removal in substitution for the requirements of sections 72 and 74 of title 28, U.S.C., 1940 ed., for the filing of the removal petition in the State court. The last sentence of subsection (e) is derived from sections 72, 74 and 76 of title 28, U.S.C., 1940 ed.

Subsection (f) is derived from sections 75 and 76 of title 28, U.S.C., 1940 ed.

Since the procedure in removal cases is now governed by the Federal Rules of Civil Procedure [Rule 81(c)] and Federal Rules of Criminal Procedure [Rule 54(b)], the detailed directions of the various sections with respect to such procedure were omitted as unnecessary.

Thus the provision of section 72 of title 28, U.S.C., 1940 ed., with respect to appearance, special bail and filing the record were omitted as covered by the Federal Rules of Civil Procedure, Rules 64, 81(c).

The provisions of section 74 of title 28, U.S.C., 1940 ed., as to the effect of security and other proceedings and remedies in the State court were omitted as covered by section 1450 of this title.

The requirements of section 74 of title 28, U.S.C., 1940 ed., that the clerk of the State court shall furnish copies of pleadings and papers to the petitioner and that the petitioner shall file the same in the district court are covered by section 1447 of this title.

The provisions of section 74 of title 28, U.S.C., 1940 ed., requiring the adverse parties to plead anew in the district court were omitted as unnecessary in view of Federal Rules of Civil Procedure, Rule 81(c). The last sentence of such section was omitted as covered by section 1447(d) of this title.

1949 ACT

Subsection (b) of section 1446 of title 28, U.S.C., as revised, has been found to create difficulty in those

States, such as New York, where suit is commenced by the service of a summons and the plaintiff's initial pleading is not required to be served or filed until later.

The first paragraph of the amendment to subsection (b) corrects this situation by providing that the petition for removal need not be filed until 20 days after the defendant has received a copy of the plaintiff's initial pleading.

This provision, however, without more, would create further difficulty in those States, such as Kentucky, where suit is commenced by the filing of the plaintiff's initial pleading and the issuance and service of a summons without any requirement that a copy of the pleading be served upon or otherwise furnished to the defendant. Accordingly the first paragraph of the amendment provides that in such cases the petition for removal shall be filed within 20 days after the service of the summons.

The first paragraph of the amendment conforms to the amendment of rule 81(c) of the Federal Rules of Civil Procedure, relating to removed actions, adopted by the Supreme Court on December 29, 1948, and reported by the Court to the present session of Congress.

The second paragraph of the amendment to subsection (b) is intended to make clear that the right of removal may be exercised at a later stage of the case if the initial pleading does not state a removable case but its removability is subsequently disclosed. This is declaratory of the existing rule laid down by the decisions. (See for example, *Powers v. Chesapeake etc., Ry. Co.,* 169 U.S. 92.)

In addition, this amendment clarifies the intent of section 1446(e) of title 28, U.S.C., to indicate that notice need not be given simultaneously with the filing, but may be given promptly thereafter.

REFERENCES IN TEXT

The Federal Rules of Civil Procedure, referred to in subsecs. (a) and (f), are set out in the Appendix to this title.

Section 337 of the Tariff Act of 1930, referred to in subsec. (f), is classified to section 1337 of Title 19, Customs Duties.

AMENDMENTS

1996—Subsec. (c)(1). Pub. L. 104–317 substituted "defendant or defendants" for "petitioner".

1994—Subsec. (f). Pub. L. 103–465 added subsec. (f).

1991—Subsec. (c)(1). Pub. L. 102–198, §10(a)(1), (4), substituted "notice of" for "petition for" and "the notice!" for "the petition".

Subsec. (c)(2). Pub. L. 102–198, §10(a)(1), (4), substituted "notice of" for "petition for" and substituted "notice" for "petition" in three places.

Subsec. (c)(3). Pub. L. 102–198, §10(a)(1), (2), substituted "notice of" for "petition for" and "prosecution is first remanded" for "petition is first denied".

Subsec. (c)(4), (5). Pub. L. 102–198, §10(a)(3), added pars. (4) and (5) and struck out former pars. (4) and (5) which read as follows:

"(4) The United States district court to which such petition is directed shall examine the petition promptly. If it clearly appears on the face of the petition and any exhibits annexed thereto that the petition for removal should not be granted, the court shall make an order for its summary dismissal.

"(5) If the United States district court does not order the summary dismissal of such petition, it shall order an evidentiary hearing to be held promptly and after such hearing shall make such disposition of the petition as justice shall require. If the United States district court determines that such petition shall be granted, it shall so notify the State court in which prosecution is pending, which shall proceed no further."

Subsec. (d). Pub. L. 102–198, §10(a)(1), (4), (5), substituted "notice of removal" for "petition for the removal", struck out "and bond" after "civil action", and substituted "notice with" for "petition with".

1988—Subsec. (a). Pub. L. 100–702, §1016(b)(1), amended subsec. (a) generally. Prior to amendment, subsec. (a) read as follows: "A defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such action is pending a verified petition containing a short and plain statement of the facts which entitle him or them to removal together with a copy of all process, pleadings and orders served upon him or them in such action."

Subsec. (b). Pub. L. 100–702, §1016(b)(2), substituted "notice of removal" for "petition for removal" in two places and inserted before period at end of second par. ", except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action".

Subsecs. (d) to (f). Pub. L. 100–702, §1016(b)(3), redesignated subsecs. (e) and (f) as (d) and (e), respectively, and struck out former subsec. (d) which read as follows: "Each petition for removal of a civil action or proceeding, except a petition in behalf of the United States, shall be accompanied by a bond with good and sufficient surety conditioned that the defendant or defendants will pay all costs and disbursements incurred by reason of the removal proceedings should it be determined that the case was not removable or was improperly removed."

1977—Subsec. (c). Pub. L. 95–78, §3(a), designated existing provisions as par. (1), set a period of 30 days as the maximum allowable time prior to commencement of trial and following arraignment during which time a petition for removal can be filed, provided for the grant of additional time for good cause shown, and added pars. (2) to (5).

Subsec. (e). Pub. L. 95–78, §3(b), inserted "for the removal of a civil action" after "filing of such petition".

1965—Subsec. (b). Pub. L. 89–215 substituted "thirty days" for "twenty days" wherever appearing.

1949—Subsec. (b). Act May 24, 1949, §83(a), provided that the petition for removal need not be filed until 20 days after the defendant has received a copy of the plaintiff's initial pleading, and provided that the petition for removal shall be filed within 20 days after the service of summons.

Subsec. (e). Act May 24, 1949, §83(b), indicated that notice need not be given simultaneously with the filing, but may be made promptly thereafter.

EFFECTIVE DATE OF 1994 AMENDMENT

Amendment by Pub. L. 103–465 applicable with respect to complaints filed under section 1337 of Title 19, Customs Duties, on or after the date on which the World Trade Organization Agreement enters into force with respect to the United States [Jan. 1, 1995], or in cases under section 1337 of Title 19 in which no complaint is filed, with respect to investigations initiated under such section on or after such date, see section 322 of Pub. L. 103–465, set out as a note under section 1337 of Title 19.

EFFECTIVE DATE OF 1977 AMENDMENT

Amendment by Pub. L. 95–78 effective Oct. 1, 1977, see section 4 of Pub. L. 95–78, set out as an Effective Date of Pub. L. 95–78 note under section 2074 of this title.

§ 1447. Procedure after removal generally

(a) In any case removed from a State court, the district court may issue all necessary orders and process to bring before it all proper parties whether served by process issued by the State court or otherwise.

(b) It may require the removing party to file with its clerk copies of all records and proceedings in such State court or may cause the same to be brought before it by writ of certiorari issued to such State court.

West's

# Annotated
# California Codes



## BUSINESS AND PROFESSIONS
## CODE

Sections 16000 to 17499

---

*Official*
*California Business and Professions Code*
*Classification*

---

**THOMSON**

**WEST** ™

MAT #40616580

Water Act claims in state court. 7 Hastings W.–N.W.J.Envtl.L. & Pol'y 127 (2001).

Why the increasing role of public policy in California's unfair competition law is a slippery step in the wrong direction. Joshua D. Taylor, 52 Hastings L.J. 1131 (2001).

## § 17200. Unfair competition; prohibited activities

As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code.

(Added by Stats.1977, c. 299, p. 1202, § 1. Amended by Stats.1992, c. 430 (S.B.1586), § 2.)

### Validity

*This section is recognized as preempted by federal law, as to credit reporting agencies, in Howard v. Blue Ridge Bank, N.D.Cal.2005, 371 F.Supp.2d 1139.*

*This statute was held preempted, as to claims involving interstate sales of wholesale electricity, by the Federal Power Act, under which the Federal Energy Regulatory Commission was granted exclusive jurisdiction over interstate sales of wholesale electricity, in the decision of In re Enron Corp., 2005, 328 B.R. 75.*

*This section was held preempted by the Home Owners' Loan Act, in the case of Silvas v. E\*Trade Mortg. Corp., S.D.Cal.2006, 421 F.Supp.2d 1315, affirmed 514 F.3d 1001.*

### Historical and Statutory Notes

The 1992 amendment inserted "any" and "act or".

Legislative intent of amendment by Stats.1992, c. 430 (S.B.1586), see Historical and Statutory Notes under Business and Professions Code § 12246.

### Cross References

Advertisement of used vehicle as certified, see Vehicle Code § 11713.18.
Advertising services relating to sales of public property, see Government Code § 53086.
Check cashers, failure to post information or action contrary to posted information, unfair business practice, see Civil Code § 1789.32.
Cigarette tax, stamps and impressions, affixation prior to distribution, see Revenue and Taxation Code § 30163.
Cigarettes and tobacco products, improper use of tax stamps and meter impressions, unfair competition, see Revenue and Taxation Code § 30165.1.
Continuing care contracts, violations, offense and penalties, see Health and Safety Code § 1793.5.
Emergencies and major disasters, consumer protection, cumulative remedies, see Penal Code § 396.
Grey market goods, unfair competition under this section, see Civil Code § 1797.86.
Health care services plans,
    Licensing and fees, exemptions, director's responsibilities, see Health and Safety Code § 1349.2.
    Solicitors or solicitor firms, grounds for disciplinary action, see Health and Safety Code § 1388.
    Suspension or revocation of licenses, grounds for disciplinary action, see Health and Safety Code § 1386.
Imported poultry meat, violation, see Food and Agricultural Code § 27232.
Motor vehicles, dealers, unlawful advertising, see Vehicle Code § 11713.16.
Motor vehicles, lessor-retailers, unlawful advertising, see Vehicle Code § 11614.1.
Nonprofit community service organization, exemption from requirements imposed on proraters, criteria, see Financial Code § 12104.
Particular advertising offenses, businesses selling consumer goods or services, see Business and Professions Code § 17538.5.
Private Health Care Voluntary Purchasing Alliance Act, registration approval or renewal, grounds for adverse action, see Insurance Code § 10823.

236

# West's

# ANNOTATED

# CALIFORNIA CODES

~~~~~~~

## CIVIL CODE

## Sections 2395 to 2944.9

### Volume 11

### 2014
### Cumulative Pocket Part

Replacing 2013 Pocket Part supplementing 2012 main volume.
Pocket Part will be supplemented by Interim Update Service Pamphlets
No. 1 and No. 2 in 2014.

**Includes all laws through c. 800 of the 2013 portion of the 2013–2014
Regular Session, the end of the 2013–2014 First Extraordinary
Session, and Res. c. 123 (S.C.A.3), subject to
approval at the June 3, 2014 election.**



THOMSON REUTERS™

Mat #41502898

45

RECEIVED DEC 12 2013

### Law Review and Journal Commentaries

Rights in foreclosure: To protect homeowners facing foreclosure, the National Mortgage Settlement and Homeowner's Bill of Rights impose new standards on mortgage servicers. Lois M. Jacobs and Heather E. Stern, 35 L.A. Law. 24 (Jan. 2013).

### Research References

**Encyclopedias**

Cal. Civ. Prac. Real Property Litigation § 4:96, Notice of Default.

**Forms**

West's California Code Forms, Civil § 2924 Form 1, Notice of Default--Under Mortgage.

West's California Code Forms, Civil § 2924F Form 1, Notice of Sale--Under Mortgage.

West's California Code Forms, Civil § 2923.54 Form 1, Declaration of Mortgage Loan Servicer Under Notice of Sale.

**Treatises and Practice Aids**

Rutter, Cal. Practice Guide: Real Prop. Transactions Ch. 6-I, I. Real Property Foreclosures and Antideficiency Laws.

Rutter, Cal. Practice Guide: Real Prop. Transactions Gen. Matls., Highlights.

Miller and Starr California Real Estate § 4:12, Mortgage Loan Origination, Brokerage, and Servicing.

Miller and Starr California Real Estate § 4:78, Federal and State Regulation of Residential Mortgage Loan Origination and Servicing--In General.

Miller and Starr California Real Estate § 10:181.10, Prior Notification and Consultation for Residential Loans Originated Between January 1, 2003 and December 31, 2007.

Miller and Starr California Real Estate § 10:181.20, Prior Notification, Consultation and Modification Requirements for Owner-Occupied First Lien Mortgage Loans Effective January 1, 2013.

19 NO. 5 Miller & Starr, California Real Estate Newsalert 2, Deeds of Trust.

20 NO. 4 Miller & Starr, California Real Estate Newsalert 6, Deeds of Trust.

4 Witkin, California Summary 10th Security Transactions in Real Property § 150, Content and Time of Notice.

### § 2923.6.  Legislative findings and declarations; pooling and servicing agreements; loan modification or workout plan; first lien loan modification applications

*Section operative until Jan. 1, 2018.  See, also, section added by Stats.2012, c. 86 (A.B.278), § 8, operative Jan. 1, 2018, and section added by Stats.2012, c. 87 (S.B.900), § 8, operative Jan. 1, 2018.*

(a) The Legislature finds and declares that any duty that mortgage servicers may have to maximize net present value under their pooling and servicing agreements is owed to all parties in a loan pool, or to all investors under a pooling and servicing agreement, not to any particular party in the loan pool or investor under a pooling and servicing agreement, and that a mortgage servicer acts in the best interests of all parties to the loan pool or investors in the pooling and servicing agreement if it agrees to or implements a loan modification or workout plan for which both of the following apply:

(1) The loan is in payment default, or payment default is reasonably foreseeable.

(2) Anticipated recovery under the loan modification or workout plan exceeds the anticipated recovery through foreclosure on a net present value basis.

(b) It is the intent of the Legislature that the * * * mortgage servicer offer the borrower a loan modification or workout plan if such a modification or plan is consistent with its contractual or other authority.

(c) If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending. A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee's sale until any of the following occurs:

Additions or changes indicated by underline; deletions by asterisks * * *

CIVIL CODE § 2923.6

(1) The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired.

(2) The borrower does not accept an offered first lien loan modification within 14 days of the offer.

(3) The borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first lien loan modification.

(d) If the borrower's application for a first lien loan modification is denied, the borrower shall have at least 30 days from the date of the written denial to appeal the denial and to provide evidence that the mortgage servicer's determination was in error.

(e) If the borrower's application for a first lien loan modification is denied, the mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or, if a notice of default has already been recorded, record a notice of sale or conduct a trustee's sale until the later of:

(1) Thirty-one days after the borrower is notified in writing of the denial.

(2) If the borrower appeals the denial pursuant to subdivision (d), the later of 15 days after the denial of the appeal or 14 days after a first lien loan modification is offered after appeal but declined by the borrower, or, if a first lien loan modification is offered and accepted after appeal, the date on which the borrower fails to timely submit the first payment or otherwise breaches the terms of the offer.

(f) Following the denial of a first lien loan modification application, the mortgage servicer shall send a written notice to the borrower identifying the reasons for denial, including the following:

(1) The amount of time from the date of the denial letter in which the borrower may request an appeal of the denial of the first lien loan modification and instructions regarding how to appeal the denial.

(2) If the denial was based on investor disallowance, the specific reasons for the investor disallowance.

(3) If the denial is the result of a net present value calculation, the monthly gross income and property value used to calculate the net present value and a statement that the borrower may obtain all of the inputs used in the net present value calculation upon written request to the mortgage servicer.

(4) If applicable, a finding that the borrower was previously offered a first lien loan modification and failed to successfully make payments under the terms of the modified loan.

(5) If applicable, a description of other foreclosure prevention alternatives for which the borrower may be eligible, and a list of the steps the borrower must take in order to be considered for those options. If the mortgage servicer has already approved the borrower for another foreclosure prevention alternative, information necessary to complete the foreclosure prevention alternative.

(g) In order to minimize the risk of borrowers submitting multiple applications for first lien loan modifications for the purpose of delay, the mortgage servicer shall not be obligated to evaluate applications from borrowers who have already been evaluated or afforded a fair opportunity to be evaluated for a first lien loan modification prior to January 1, 2013, or who have been evaluated or afforded a fair opportunity to be evaluated consistent with the requirements of this section, unless there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer.

(h) For purposes of this section, an application shall be deemed "complete" when a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer.

(i) Subdivisions (c) to (h), inclusive, shall not apply to entities described in subdivision (b) of Section 2924.18.

Additions or changes indicated by <u>underline</u>; deletions by asterisks * * *

**§ 2923.6** CIVIL CODE

(j) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(k) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

(Added by Stats.2008, c. 69 (S.B.1137), § 3, eff. July 8, 2008. Amended by Stats.2009, c. 43 (S.B.306), § 2; Stats.2012, c. 86 (A.B.278), § 7; Stats.2012, c. 87 (S.B.900), § 7.)

## Repeal
*For repeal of this section, see its terms.*

## Historical and Statutory Notes

**2012 Legislation**

For legislative findings and declarations, severability, and cost reimbursement provisions relating to Stats.2012, c. 86 (A.B.278), see Historical and Statutory Notes under Civil Code § 2920.5, as added by Stats.2012, c. 86 (A.B.278).

Stats.2012, c. 87 (S.B.900) rewrote this section, which read:

"(a) The Legislature finds and declares that any duty servicers may have to maximize net present value under their pooling and servicing agreements is owed to all parties in a loan pool, or to all investors under a pooling and servicing agreement, not to any particular party in the loan pool or investor under a polling and servicing agreement, and that a servicer acts in the best interests of all parties to the loan pool or investors in the pooling and servicing agreement if it agrees to or implements a loan modification or workout plan for which both of the following apply:

"(1) The loan is in payment default, or payment default is reasonably foreseeable.

"(2) Anticipated recovery under the loan modification or workout plan exceeds the anticipated recovery through foreclosure on a net present value basis.

"(b) It is the intent of the Legislature that the mortgagee, beneficiary, or authorized agent offer the borrower a loan modification or workout plan if such a modification or plan is consistent with its contractual or other authority.

"(c) This section shall remain in effect only until January 1, 2013, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2013, deletes or extends that date."

For legislative findings and declarations, severability, and cost reimbursement provisions relating to Stats.2012, c. 87 (S.B.900), see Historical and Statutory Notes under Civil Code § 2920.5, as added by Stats.2012, c. 87 (S.B.900).

For letter of intent regarding Stats.2012, c. 86 (A.B.278) and Stats.2012, c. 87 (S.B.900), see Historical and Statutory Notes under Civil Code § 2920.5.

Section affected by two or more acts at the same session of the Legislature, see Government Code § 9605.

## Cross References

Material violations of specified foreclosure provisions, action for injunctive relief by borrower prior to recording of trustee's deed upon sale, liability to borrower after recording of trustee's deed upon sale, effect of violation on validity of sale, third-party encumbrancer, signatory to specified consent judgment, attorney's fees and costs, see Civil Code § 2924.12.

Mortgage service providers offering one or more foreclosure prevention alternatives, sending of written communication to borrower, see Civil Code § 2924.9.

## Law Review and Journal Commentaries

Rights in foreclosure: To protect homeowners facing foreclosure, the National Mortgage Settlement and Homeowner's Bill of Rights impose new standards on mortgage servicers. Lois M. Jacobs and Heather E. Stern, 35 L.A. Law. 24 (Jan. 2013).

## Research References

**ALR Library**

13 ALR, Federal 2nd Series 161, Preemption Issues Arising Under Home Owners' Loan Act of 1933, 12 U.S.C.A. §§ 1461 et Seq.

**Encyclopedias**

CA Jur. 3d Mortgages § 64, Modification of Mortgage to Avoid Foreclosure.

Cal. Civ. Prac. Real Property Litigation § 4:96, Notice of Default.

Additions or changes indicated by underline; deletions by asterisks * * *

CIVIL CODE                                                            § 2923.6

Cal. Civ. Prac. Real Property Litigation § 4:98, Notice of Sale.

**Treatises and Practice Aids**

Rutter, Cal. Practice Guide: Real Prop. Transactions Ch. 6-I, I. Real Property Foreclosures and Antideficiency Laws.

Miller and Starr California Real Estate § 4:69, Servicing of Secured Obligations—In General.

Miller and Starr California Real Estate § 10:181.10, Prior Notification and Consultation for Residential Loans Originated Between January 1, 2003 and December 31, 2007.

Miller and Starr California Real Estate § 10:181.20, Prior Notification, Consultation and Modification Requirements for Owner-Oc-

cupied First Lien Mortgage Loans Effective January 1, 2013.

19 NO. 1 Miller & Starr, California Real Estate Newsalert 1, The Perata Foreclosure Bill (SB 1137): New Rights for Defaulting Borrowers and Tenants; New Complications for Foreclosing Lenders.

19 NO. 4 Miller & Starr, California Real Estate Newsalert 10, Deeds of Trust.

20 NO. 4 Miller & Starr, California Real Estate Newsalert 6, Deeds of Trust.

Residential Mortgage Lending: State Regulation Manual - West California § 2:19, Foreclosure.

4 Witkin, California Summary 10th Security Transactions in Real Property § 212, in General.

## § 2923.6. Legislative findings and declarations; pooling and servicing agreements; loan modification or workout plan

*Section added by Stats.2012, c. 86 (A.B.278), § 8, operative Jan. 1, 2018. See, also, section operative until Jan. 1, 2018, and another section of the same number, added by Stats.2012, c. 87 (S.B.900), § 8, operative Jan. 1, 2018.*

(a) The Legislature finds and declares that any duty mortgage servicers may have to maximize net present value under their pooling and servicing agreements is owed to all parties in a loan pool, or to all investors under a pooling and servicing agreement, not to any particular party in the loan pool or investor under a pooling and servicing agreement, and that a mortgage servicer acts in the best interests of all parties to the loan pool or investors in the pooling and servicing agreement if it agrees to or implements a loan modification or workout plan for which both of the following apply:

(1) The loan is in payment default, or payment default is reasonably foreseeable.

(2) Anticipated recovery under the loan modification or workout plan exceeds the anticipated recovery through foreclosure on a net present value basis.

(b) It is the intent of the Legislature that the mortgage servicer offer the borrower a loan modification or workout plan if such a modification or plan is consistent with its contractual or other authority.

(c) This section shall become operative on January 1, 2018.

(Added by Stats.2012, c. 86 (A.B.278), § 8, operative Jan. 1, 2018.)

### Historical and Statutory Notes

**2012 Legislation**

Stats.2012, c. 86 and c. 87 added similar versions of this section.

For legislative findings and declarations, severability, and cost reimbursement provisions relating to Stats.2012, c. 86 (A.B.278), see Historical and Statutory Notes under Civil Code § 2920.5, as added by Stats.2012, c. 86 (A.B.278).

For letter of intent regarding Stats.2012, c. 86 (A.B.278) and Stats.2012, c. 87 (S.B.900), see Historical and Statutory Notes under Civil Code § 2920.5.

Section affected by two or more acts at the same session of the Legislature, see Government Code § 9605.

### Law Review and Journal Commentaries

Rights in foreclosure: To protect homeowners facing foreclosure, the National Mortgage Settlement and Homeowner's Bill of Rights impose new

standards on mortgage servicers. Lois M. Jacobs and Heather E. Stern, 35 L.A. Law. 24 (Jan. 2013).

Additions or changes indicated by underline; deletions by asterisks * * *

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2014, I electronically filed the foregoing **APPELLANTS' OPENING BRIEF** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Signature: s/ Lisa M. Freeman